[Civ. No. 41696. Second Dist., Div. Two. June 27, 1973.]

GEORGE CHILDRESS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Richard S. Buckley, Public Defender, Harold E. Shabo and Glen F. Mowrer, Jr., Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**ROTH, P. J.**—Petitioner seeks a writ of mandate to compel the respondent court to dismiss a felony information.

On March 26, 1971, petitioner, George Childress, was charged in case A-271195 in count I with assault with a deadly weapon in violation of section 217 of the Penal Code, and in count II with armed robbery in violation of section 211 of the Penal Code, in a complaint filed in Los Angeles Municipal Court. The offenses were alleged to have occurred on March 25, 1971. A warrant for petitioner's arrest was issued in late March or early April 1971.

At the time the complaint in the above case was filed, there were pending against petitioner both a federal charge and Pasadena Superior Court case A-546346 in which a complaint had been filed in July 1970, charg-

ing armed robbery. On March 25, 1971, the date of the offenses alleged at bench, petitioner was free on bail in the Pasadena case and was scheduled to appear in late March on the federal charge.

Officer Slaff of the Los Angeles Police Department, was assigned on March 25, 1971, to investigate the present case. Slaff interviewed the victim and witness to the crime charged, confirming petitioner's identity and obtaining further information regarding him. On the basis of this information and previous investigation of a different robbery in which petitioner was involved, Slaff checked various addresses where Childress was known or had lived and inquired at the bank where he was supposed to have an account and his supposed place of employment, but was unable to locate petitioner.

On March 26, 1971, Slaff arranged with the FBI to take Childress into custody when petitioner appeared in court in the pending federal case as agent for him. After the federal hearing Slaff learned from the FBI and from the bail bonding company that Childress had skipped bail.

Continuing his investigation, Slaff learned that Childress was presently on probation in a federal case. He contacted the United States Probation Officer and also advised state and local authorities that petitioner was wanted. Slaff did nothing further to locate petitioner. All active police attempts to apprehend petitioner ceased. It was stipulated that from the date petitioner failed to appear on the federal charge in March 1971, until his arrest on September 29, 1971, in San Francisco by FBI agents, petitioner was a fugitive from justice.

After the San Francisco arrest petitioner was brought to Los Angeles County jail and booked under his real name, George Childress, on October 2, 1971. He remained in the custody of the Los Angeles County Sheriff since that date. He appeared in Pasadena Superior Court on the robbery charge in case No. 546346 on October 7, 1971. That case is still pending. Sometime between October 1971 and August 1972, Childress also appeared in federal court. He was arrested in August 1972 on the April 1971 warrant while in the Los Angeles jail and arraigned on August 7, 1972 for the March 26, 1971 charges.

When the case was called for trial on October 16, 1972, petitioner moved to dismiss on the ground he was denied his constitutional right to a speedy trial since the People failed to make any significant effort to arrest him for 16 months after the issuance of the warrant of arrest and the filing of the complaint and submitted an affidavit to show that his defense was prejudicially affected by the delay. After an evidentiary hearing petitioner's motion was denied on December 5, 1972.

No explanation was offered for the 10-month delay between petitioner's arrest and the arraignment, except that during that period the sheriff's office failed to notify the Los Angeles police or the district attorney that petitioner was in custody under the warrant at bench.

In his affidavit supporting the motion to dismiss (Exh.D) petitioner alleges: ". . . on or about April 25, 1971 . . . I was in the company of persons known to me as 'Jesse' [last name unknown] and Mary Thurmond . . . these persons have information with regard to the facts . . . crucial to my defense of . . . ." Petitioner knew the addresses of these persons in 1971, but he did not know their present addresses. Although petitioner's brother attempted to locate Jesse after petitioner was informed of the charges against him in August 1972, and a friend of petitioner's attempted to locate Mary Thurmond in September 1972, they were unable to find either. Petitioner also avers: ". . . on or about July, 1971, the alleged victim in this case engaged in a conversation with me in San Francisco, . . . and did not inform me of any claim of a theft or robbery by myself or any person known to me. That conversation was overheard to the best of my knowledge and belief, by a person known to me as Phil Dawson." Due to the delay in prosecution petitioner has been unable to locate Dawson. Petitioner finally averred that due to such delay, "evidence and other material crucial to the defense in this case are now missing, destroyed or otherwise unavailable," in spite of efforts of himself and his brother to locate two alleged witnesses who were also allegedly missing. The affidavit also avers that he had a conversation with Phil Dawson in San Francisco and that Dawson (the victim of the crime) said nothing about the crime to the appellant who was charged with assaulting and robbing him.

The trial court in denying petitioner's motion to dismiss, said in pertinent part: "We have an unusual circumstance . . . the primary cause for the defendant's not having been prosecuted within a reasonable time . . . is the fact that defendant jumped bail and fled the jurisdiction . . . he does not appear before this court seeking fairness, having acted in a manner —which would have . . . permitted [prosecution] within the time that the constitution and the statutes of California contemplate—the defendant having fled the jurisdiction, certain things happened within the Sheriff's office which should not have happened.

"But I think that the contributing and primary cause for these things having happened is the defendant's own conduct."

The foregoing facts make clear that we have before us a pre-arrest delay. There may have been some confusion prior to *Jones* v. *Superior*

*Court,* 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], that pre-arrest delay was a statute of limitation question and was not a factor in making a determination of whether defendant was accorded his right to speedy trial. ■ *Jones,* however, squarely decides that speedy trial is a constitutional guarantee which is self-executing and cannot be limited by statute. (*Jones* v. *Superior Court, supra,* p. 739; *Sykes* v. *Superior Court,* 9 Cal. 3d 83, 86-88 [106 Cal.Rptr. 786, 507 P.2d 90]; *People* v. *Mitchell,* 8 Cal. 3d 164 [104 Cal.Rptr. 348, 501 P.2d 916].)

In *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182],[1] the court at pages 530-533 [33 L.Ed.2d at pages 116-119], establishes four elements to be considered *together* in determining whether a delay in trial violates federal constitutional standard: length of delay, reason for the delay, defendant's timely assertion of his right and *prejudice to defendant.* This four-pronged test of *Barker* has been adopted by *Jones.* The reason for and the length of the delay are apparent. Petitioner did promptly assert his right to a speedy trial. ■ However, the trial court although finding that the People suffered prejudice, made no finding as to the prejudice, if any, suffered by appellant. A finding of prejudice—or lack of it— is vital to a resolution of whether appellant's constitutional right was violated. (*Jones* v. *Superior Court, supra,* p. 740; cf. *Strunk* v. *United States* (1973) 412 U.S. 434 [37 L.Ed.2d 56, 93 S.Ct. 2260].)

Let a peremptory writ of mandate issue directing the trial court to take evidence on the subject of prejudice suffered by appellant as a result of the admitted negligent delay albeit prompted by appellant's conduct and directing the trial court to dismiss the charges at bench or proceed with a trial thereof in accordance with such finding.

Fleming, J., concurred.

**COMPTON, J.**—I concur in the decision of the majority to require specific findings by the trial court on the question of whether the defendant in fact suffered any prejudice from the delay. However, I feel compelled to expand on the reasoning contained in the majority opinion.

Of the four prongs of the *Barker* and *Jones* test, it would appear that the two most crucial ones are those of (1) the reason for the delay, and (2) the prejudice to the defendant. In the instant case, we are not dealing

---

[1]Federal standards as well as state standards are applicable when denial of a speedy trial is urged on constitutional grounds because of an untimely delay between the time of filing of charges and the defendant's arrest. (*Sykes* v. *Superior Court, supra,* 9 Cal.3d 83, 93.)

with a deliberate delay by which the prosecution affirmatively sought to gain some advantage over the defendant. As the majority clearly points out this was a pure case of inadvertence on the part of the record keeping personnel of the Los Angeles County Sheriff's Department. In such a situation it would seem that the court should not indulge in a presumption that the defendant was prejudiced but should undertake to make an actual determination of whether prejudice in fact exists.

The defendant's showing at the original hearing was very thin indeed. He does not allege in his affidavit that he ever had the actual ability to locate the so-called missing witnesses. For example, as to Mary Thurmond, his statement was only that her last known residence was in San Francisco, California, in June or July of 1971, and as to Jesse, that she resided in the "Venice-Crenshaw area in the City of Los Angeles on or about April of 1971." Assuming that that could be construed as a claim on the part of defendant that he could have located these people in those broad, rather well inhabited, areas of this state as of the date set forth in the affidavit, defendant has made no showing that as of October 1971, when he ceased to be a fugitive from justice, he had any ability at that point in time to locate the so-called missing witnesses. Defendant simply failed to make any showing that the delay from October 1971 to August of 1972, affected his ability to locate the missing witnesses.

Concerning the alleged missing witness Phil Dawson, defendant's affidavit is completely silent on the issue of whether he ever at any time knew where to locate Phil Dawson.

Furthermore, the value of this latter witness is marginal. According to the defendant's allegations, all that Dawson could testify to is that in an alleged conversation with the victim of the robbery in July of 1971, the victim failed to mention the subject of the robbery.

In summation then, the defendant's attempt at showing prejudice did not come close to establishing that his inability to locate the missing witnesses was in any way affected by the 10-month delay between October 1971 and August 1972.

Finally, I believe that the trial judge properly applied the rule that "but for the defendant's misconduct in becoming a fugitive from justice, the delay would never have occurred." However, I think the majority is quite correct in directing that the trial judge support his conclusion in that regard by specific findings concerning the credibility of the defendant and the specific facts underlying that conclusion...

A petition for a rehearing was denied July 23, 1973, and petitioner's application for a hearing by the Supreme Court was denied August 22, 1973.