[No. F016394. Fifth Dist. Mar. 18, 1992.]

ROBERT LEE OGLE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Willard L. Weddell, Public Defender, and Arthur Gonzalez, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Thomas Y. Shigemoto, Deputy Attorneys General, for Real Party in Interest.

## OPINION

### STONE (W. A.), Acting P. J.—

#### STATEMENT OF THE CASE

Petitioner, Robert Lee Ogle, is a defendant in a misdemeanor prosecution pending in the South Kern Municipal Court (municipal court). On June 13, 1991, he filed a motion to dismiss in that court, asserting the two-year delay between the date the complaint was filed (Apr. 6, 1989) and the date of his arraignment (Apr. 12, 1991) violated his federal constitutional right to a speedy trial. The municipal court denied his motion to dismiss. Following his petition for a peremptory writ of mandate and/or prohibition, the superior court denied relief. By petition for writ of mandate and/or prohibition, he seeks further review in these proceedings.

#### STATEMENT OF FACTS

*Historical Facts*

Shortly before 6:45 p.m. on March 20, 1989, an officer of the California Highway Patrol stopped a car driven (and solely occupied) by Ogle and arrested him for driving under the influence of alcohol, having a blood-alcohol level exceeding .10 percent. At 8:07 and 8:09 p.m., Ogle performed breath tests which indicated blood-alcohol readings of .26 percent and .25 percent, respectively. At 12:35 p. m. on March 21, 1989, he was released on his signed promise to appear in the municipal court on April 6, 1989.

On April 6, 1989, the district attorney filed a misdemeanor complaint in the municipal court, charging Ogle with driving under the influence of

alcohol with a blood-alcohol level exceeding .10 percent, and with driving with a suspended or revoked driver's license. The complaint also alleged prior convictions of violation of Vehicle Code section 23152 in 1984 and 1987. When Ogle failed to appear, the municipal court issued a bench warrant and sent a DL 159 form[1] to the Department of Motor Vehicles.

On April 12, 1991, Ogle appeared in the municipal court without counsel and pled not guilty to all counts alleged in the complaint; the court recalled the bench warrant. On May 3, the court appointed counsel for Ogle, Ogle again pled not guilty to all counts, and the court set a jury trial for June 11. On May 30, the court granted Ogle's motion for continuance so that he could file a motion to dismiss.

Ogle, 42 years old, was the sole witness at the hearing on the dismissal motion. According to him, for the previous five years, excepting a five-week period of hospitalization, he had lived with his parents and his son at the same address on Aravaca Drive in Paramount, Los Angeles County.[2] He did not recall the events of March 20, 1989. Reading the police report of the incident did not refresh his recollection. Though the promise to appear form bore his signature, he did not recall signing the form. He did not recall who retrieved his parents' car after it was impounded. He did not appear in court on April 6, 1989, because he was not aware he had been arrested, jailed, released or charged.

Ogle attributed his lack of recall to a twenty-five-year history of drinking, which sometimes resulted in blackouts of two or three days. Under questioning by the court, he acknowledged he would not have remembered the incident the day after it occurred. He had been diagnosed as manic-depressive and at the time was treated with lithium. In the two years since the arrest, no police officer came to his house to arrest him; he received no mail from either the municipal court or the Kern County Sheriff's Department.

Following an accident in Bellflower on March 7, 1991, he received a citation. Questioned by the police officers, he told them his correct name and said he did not have a driver's license. After running a check, they told him he had no outstanding warrants. When he went to the Department of Motor Vehicles to have his license reissued, he learned of an outstanding warrant

---

[1] A DL 159 form is filed by a court with the Department of Motor Vehicles when a cited or arrested driver has failed to appear in a case involving a Vehicle Code violation. Although that form is not preserved by the Department of Motor Vehicles or, in this case, by the municipal court, the information contained in the DL 159 is retained by the municipal court on a form DL 106R and by the Department of Motor Vehicles on a form DL 414. Certified copies of each of the retained documents were added to the instant record by order of this court dated January 27, 1992. It appears it is because of this notification procedure that Ogle discovered the warrant outstanding for his failure to appear.

[2] We take judicial notice of the fact Paramount is located in Los Angeles County. (Evid. Code, §§ 452, subd. (h), 459.)

for failure to appear in the instant prosecution, his first knowledge of the case. He then voluntarily appeared in the municipal court.

## Municipal Court Hearing

Argument at the municipal court dismissal motion hearing centered on *Serna v. Superior Court* (1985) 40 Cal.3d 239 [219 Cal.Rptr. 420, 707 P.2d. 793]. Ogle's counsel initially argued the two-year delay created a presumption of prejudice which the prosecutor could not overcome by adequate justification. The prosecutor appeared to concede the police did not act diligently. But the prosecutor and the court distinguished *Serna* on the basis Ogle had notice of the charges and was cited to appear in court, but failed to appear. The court found "absolutely no prejudice" and expressed an intention to deny the motion.

In an effort to show actual prejudice, Ogle testified as we have noted, after which the court denied the motion. Added to its earlier points, the court reasoned under Ogle's testimony that he would not have remembered the incident the day after; thus, a timely arrest "wouldn't have made a dime's worth of difference." The court's remarks also implied it did not believe Ogle's account, but the court stopped short of an actual finding to this effect.[3] While at one point the court seemed to acknowledge a balancing test applied, it did not discuss or weigh any factor other than prejudice.

## Superior Court Hearing

Argument at the hearing in superior court was similar to that at the motion hearing. The court distinguished *Serna* on the same basis as the municipal court had done, and focused on prejudice without overtly weighing other factors. "The prejudice, if any, involved in a case such as this is present [*sic*] occasioned by the defendant's only criminal conduct and failing to appear when he was ordered or promised to appear in court."

### DISCUSSION

## Adequacy of Legal Remedy

Ogle asserts a petition for writ of mandate is necessary because his appellate remedy is inadequate. Real party concedes this point, and we agree. (*Serna v. Superior Court, supra,* 40 Cal.3d at pp. 263-264.)

---

[3]"[THE COURT:] Now, he indicated at the time that he was stopped he also knew his license was suspended. So reading between the lines, do I take all of his testimony, you know, whole cock, unquestionably? He knew his license was suspended; I think he also knew why it was suspended. I think this whole thing is probably a hussle [*sic*] or shuck or jive on his part. What it comes down to even given his testimony at the very best, he said that he wouldn't have remembered this the next day so that there would [*sic*] have been any prejudice and that's about as clear as I can make it.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I have some doubts with the testimony about the blackout, . . ."

*Standard of Review*

■ "Although this matter is before the court on a petition for writ of mandate, in other contexts an original proceeding in which evidence may be taken and disputed factual allegations resolved by a judge or jury in appropriate circumstances (Code Civ. Proc., § 1090), the sole purpose of a petition filed in an appellate court pursuant to Code of Civil Procedure section 904.1, subdivision (a), is to afford appellate review of a superior court action granting or denying a petition for writ of mandate related to a pending municipal court action. . . . Because the question to be decided is whether the superior court abused its discretion or exceeded its jurisdiction in granting or denying the petition filed in that court, the review authorized by section 904.1 is limited to the record made in the superior court." (*Serna* v. *Superior Court, supra,* 40 Cal.3d at pp. 245-246, fns. omitted.)

*Barker* v. *Wingo: The Watershed Case*

In *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], the United States Supreme Court attempted "to set out the criteria by which the speedy trial right is to be judged." (*Id.* at p. 516 [33 L.Ed.2d at p. 109].) The court began by noting:

"The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. . . .

"Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." (407 U.S. at pp. 519-521 [33 L.Ed.2d at pp. 110-112], fn. omitted.)

Having made these observations, the court discussed and rejected "two rigid approaches [that] are urged upon us as ways of eliminating some of the uncertainty which courts experience in protecting the right. The first suggestion is that we hold that the Constitution requires a criminal defendant to be offered a trial within a specified time period." (*Barker* v. *Wingo, supra,* 407 U.S. at pp. 522-523 [33 L.Ed.2d at pp. 112-113].) "The second suggested alternative would restrict consideration of the right to those cases in which the accused has demanded a speedy trial." (*Id.* at pp. 523-524 [33 L.Ed.2d at pp. 112-113].)

In rejecting the so-called "demand-waiver doctrine,"[4] the court said: "Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 525 [33 L.Ed.2d at pp. 113-114], fn. omitted.) "We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." (*Id.* at p. 528 [33 L.Ed.2d at pp. 115-116].) This rule "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." (*Id.* at p. 529 [33 L.Ed.2d at p. 116].)

Having rejected rigid approaches, the court opted for "a balancing test, in which the conduct of both the prosecution and the defendant are [*sic*] weighed." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 530 [33 L.Ed.2d at pp. 116-117], fn. omitted.) The court then identified four "of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. . . . Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (*Ibid.,* fn. omitted.)

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. . . .

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. . . .

". . . Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. . . . The defendant's assertion of his

---

[4]"The demand-waiver doctrine provides that a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 525 [33 L.Ed.2d at pp. 113-114].)

speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

". . . Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (407 U.S. at pp. 530-533 [33 L.Ed.2d at pp. 116-119], fns. omitted.)

The balancing test set out in *Barker* v. *Wingo* was acknowledged in *Tullis* v. *Superior Court* (1974) 41 Cal.App.3d 387, 392-393 [115 Cal.Rptr. 177], where the trial court found petitioner had not been deprived of his right to a speedy trial "solely upon the absence of any prejudice to the petitioner caused by the delay in prosecution." (Fn. omitted.) The *Tullis* court held the trial court did not properly exercise its discretion when it failed to consider and balance the other factors set forth in *Barker* v. *Wingo.*

The salient fact in the instant case is Ogle's failure to appear. We must decipher the Supreme Court's cryptogram, "if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 529 [33 L.Ed.2d at p. 116.].)

*Sixth Amendment Speedy Trial*

 "[T]he Sixth Amendment right to speedy trial attaches in misdemeanor prosecutions, as it does in felonies, with the filing of the accusatory pleading, here a misdemeanor complaint, or arrest, whichever is first."

(*Serna* v. *Superior Court, supra,* 40 Cal.3d at p. 262, fn. omitted.)[5] Ogle's Sixth Amendment right attached on March 20, 1989, the date of his arrest, or, at the very latest, on April 6, 1989, when the complaint was filed. As of these dates, he stood "accused."

■ "When a delay in bringing a defendant to trial after the filing of formal charges has become presumptively prejudicial, and the defendant seeks dismissal of the charges on grounds that his Sixth Amendment right to a speedy trial has been violated, the court must balance the relevant factors—the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant—in assessing whether the delay has deprived the defendant of that right. [Citation.] . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [A] delay between the filing of a misdemeanor complaint and the arrest and prosecution of a defendant which exceeds one year is unreasonable and presumptively prejudicial . . . ." (*Serna* v. *Superior Court, supra,* 40 Cal.3d at pp. 252-253.)

Petitioner applies *Serna* in mechanical fashion: the two-year delay after he became an accused created a presumption of prejudice; the prosecution failed to justify the delay; therefore, the municipal court erred when it denied his motion to dismiss, and the superior court abused its discretion when it denied his petition for writ of mandate. Relying heavily on *People* v. *Perez* (1991) 229 Cal.App.3d 302 [279 Cal.Rptr. 915], real party argues petitioner essentially waived his speedy trial right when he failed to appear as he promised on April 6, 1989. Alternatively, real party contends an application of the *Barker* v. *Wingo* factors defeats petitioner's claim on the merits.

*Waiver*

In *People* v. *Perez, supra,* 229 Cal.App.3d at page 307, a murder prosecution, Justice George, writing for the majority of the court, held that by

---

[5]Both in his motion papers and at the motion hearing, Ogle's counsel argued the two-year delay violated his client's speedy trial rights under the Sixth Amendment to the United States Constitution. Counsel did not rely on the California speedy trial clause. Although his points and authorities supporting his petition referred to the speedy trial provisions of both Constitutions, the real focus was on the federal clause. The superior court could not abuse its discretion by failing to grant the writ petition on a basis not presented to the municipal court. As a practical matter, as applied to the instant case, the Sixth Amendment speedy trial provision, as interpreted judicially, is more generous to defendants than the California provision. (See *Serna* v. *Superior Court, supra,* 40 Cal.3d at pp. 250-251.) If Ogle cannot show an abuse of discretion on a Sixth Amendment ground, he would not be entitled to relief under the California Constitution.

fleeing the jurisdiction to avoid prosecution and remaining at large more than eight years, defendant waived his right to a speedy trial. Alternatively, applying the *Barker* v. *Wingo* factors, the majority said: "Even were we to hold that defendant had *not* waived his right to a speedy trial, however, we would conclude that he was not denied this right and that the superior court erred in dismissing the present case." (*Id.* at p. 314, italics original.)

The plurality opinion relied on *Barker* v. *Wingo*'s language ("[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 529)), analogous sanctions visited on fugitives from justice (*People* v. *Perez, supra,* 229 Cal.App.3d at p. 308) and case law involving interpretation of Penal Code section 1382—the statutory speedy trial right (229 Cal.App.3d at p. 309). The *Perez* court concluded, "our examination of [those] decisions does not alter our conclusion that a defendant who flees the jurisdiction of a court for the purpose of avoiding prosecution waives his or her right to a speedy trial." (*Ibid.*)

Presiding Justice Woods disagreed:

"The Sixth Amendment rights of the accused cannot be summarily dismissed or deemed waived based solely on the fact that he has fled the jurisdiction. Even when the defendant has made a concerted effort to avoid prosecution, a court must give effect to the holding of *Barker* v. *Wingo* by weighing the conduct of both sides.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Where the only circumstance which has caused the delay is the defendant's flight, . . . the claim of denial of the right to speedy trial carries almost no weight. To say, however, as the majority does, that no other factor need be considered in such cases is to set a dangerous precedent. It requires no great imagination to envision the misuse to which this ruling may be put." (*People* v. *Perez, supra,* 229 Cal.App.3d at pp. 319-320, fn. omitted (dis. opn. of Woods (A. M.), P. J.).)

However, we need not choose between the *Perez* majority and dissent. First, Ogle was not a fugitive from justice. The record contains no evidence he fled the jurisdiction, let alone the country, to avoid prosecution. The only evidence is to the contrary—he lived at his parents' house in Los Angeles County during the entire period at issue.

Second, the *Perez* majority found "[t]he efforts of the district attorney's office to secure defendant's presence for trial far exceed those efforts held

sufficient to establish due diligence in the cases discussed above. We conclude the superior court abused its discretion in finding that the People failed to exercise due diligence in attempting to secure defendant's presence for trial." (*People* v. *Perez, supra,* 229 Cal.App.3d at p. 315.) Here, the prosecution appeared to concede the police were not diligent in searching for Ogle; they apparently took no steps to find him.

■ Because the Kern County authorities failed to make any effort to arrest Ogle at his known address after Ogle failed to appear, the two-year delay was not "attributable to the defendant" within the meaning of *Barker* v. *Wingo.* Rather, the *Barker* v. *Wingo* factors were relevant to Ogle's failure to appear. The significance of his actions depends on his state of mind when he failed to appear, an issue raised by his testimony but not resolved by the municipal court.

*Presumptive Prejudice*

As we have seen, *Serna* held "a delay between the filing of a misdemeanor complaint and the arrest and prosecution of a defendant which exceeds one year is unreasonable and presumptively prejudicial . . . ." (*Serna* v. *Superior Court, supra,* 40 Cal.3d at p. 253.) Applying this principle to the facts before it, the Supreme Court held:

"The writ should also issue in cases such as this in which although the defendant offered evidence establishing a presumptively prejudicial delay, and that evidence was undisputed by the People in any essential aspect, the trial court failed to put the People to its proof, i.e., it failed to require the People to offer justification adequate to demonstrate that the legitimate interests of law enforcement warranted the disruption of defendant's life some four and one-half years after the charged offense allegedly was committed." (40 Cal.3d at p. 264.)

Ogle urges this court to apply mechanically the language of *Serna.* In essence, he argues once a defendant establishes a presumptively prejudicial delay, the only question remaining is whether legitimate law enforcement interests justified the delay here. Since the prosecution made no effort to show such interests here, Ogle concludes he should prevail.

Like real party's waiver claim, Ogle's argument focuses on the conduct of the opposing party and overlooks his own role in the delay. In doing so, Ogle overlooks an important distinction: in *Serna,* the prosecution did not dispute "in any essential aspect" the defense evidence showing a presumptively prejudicial delay. The same is not true here. The prosecution rebutted Ogle's

claim he was unaware of the pending case through evidence, including the original citation bearing Ogle's signed promise to appear, permitting an inference he willfully and knowingly failed to appear.

*Barker* v. *Wingo* identified three interests protected by the speedy trial right: prevention of oppressive pretrial incarceration; minimization of the accused's anxiety and concern; and limiting possible impairment of the defense. (*Barker* v. *Wingo, supra,* 407 U.S. at p. 532 [33 L.Ed.2d at pp. 117-118].) *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455] used somewhat different language:

"Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." (*Id.* at p. 320 [30 L.Ed.2d at pp. 478-479].) Yet another formulation appears in *United States* v. *MacDonald* (1982) 456 U.S. 1 [71 L.Ed.2d 696, 102 S.Ct. 1497]:

"The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." (*Id.* at p. 8 [71 L.Ed.2d at pp. 703-704].)

■ As stated in *Serna*:

"When unjustified prejudice to the defendant's ability to defend has been established there can be no question that reversal and dismissal are required. And where the balance of interests establishes a violation of a defendant's speedy trial right because of the impact on his other interests—prolonged restraint, public obloquy, anxiety, stress, and disruption of everyday life— . . . [r]elief should be granted . . . ." (*Serna* v. *Superior Court, supra,* 40 Cal.3d at pp. 263-264.)

Prejudice is presumed when it is reasonable to assume sufficient time elapsed to affect adversely one or more of the interests protected by the speedy trial clause. ■ Further, where the defendant had nothing to do

with the delay, law enforcement conduct becomes a paramount concern in assessing prejudice and other key factors. Otherwise stated, in such a case the sole reason for the delay will be government conduct, whether bad faith or negligent. The defendant's failure to assert his speedy trial rights will be meaningless when he is ignorant of the pending case. And his ability to prepare a defense usually will be impaired. In contrast, when the defendant knows about the pending case, responsibility for the delay may fairly be apportioned, his failure to assert his rights may be pivotal, and he will be in a position to protect his interests—if he so chooses.

Even when the government can offer no good reason to justify the delay, in a given case the defendant's own conduct may defeat his claim. Presumptive prejudice simply triggers the *Barker* v. *Wingo* balancing process.

*Barker* v. *Wingo Applied*

 *Length of delay*: *Serna* established the two-year delay between the filing of the complaint and Ogle's arraignment was presumptively prejudicial.

*Reason for delay*: The prosecution effectively conceded the police did not use diligence in arresting Ogle after his nonappearance. Contrary to the municipal court's view, the fact that a bench warrant issued at some point became known to the Department of Motor Vehicles does not demonstrate diligence. Only a minimal effort would have been required to arrest Ogle at the address shown on the citation. Ordinarily, negligence "should be weighted less heavily [than a bad faith delay to hamper the defense] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (*Barker* v. *Wingo, supra*, 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) However, if Ogle willfully failed to appear, it would seem fair to apportion some of the blame to him, diluting the government's negligence.

*Defendant's assertion of his right*: Ogle did not assert his speedy trial right for more than two years after the complaint was filed. If he knew or constructively knew of the pending case, his failure to assert his right might well be dispositive. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." (*Barker* v. *Wingo, supra*, 407 U.S. at p. 532 [33 L.Ed.2d at pp. 117-118].) However, if Ogle did not know of the pending case, his failure to assert his right would be excused.

*Prejudice*: As with the previous two factors, whether Ogle knew of the pending case is a central point. If he knew, he was in a position to prepare a

defense; further, he could decide whether to assert his speedy trial right, and thus prevent or limit disruption of his life. If he did not know, he could not be expected to prepare a defense. ■ In any event, the municipal court erred when it concluded Ogle was not prejudiced, based on Ogle's testimony he would not have recalled the underlying incident had he been arrested promptly on the complaint. Promptly arrested, Ogle may have received counsel, and presumably, counsel would have questioned his client about the incident; if Ogle did not recall the incident, counsel could have tried various measures to refresh his recollection. That a reading of the police report two years after the event did not immediately restore Ogle's recall does not mean a timely effort to spark his memory would have been fruitless. The municipal court's finding there was "absolutely no prejudice" does not end the inquiry into whether Ogle was deprived of his right to a speedy trial. (*Barker* v. *Wingo, supra,* 407 U.S. at pp. 530, 532-533 [33 L.Ed.2d at pp. 116-119]; *Tullis* v. *Superior Court, supra,* 41 Cal.App.3d at pp. 392-393.)

Further, contrary to the municipal court's reasoning, the Supreme Court has recognized "a pending misdemeanor complaint of which the defendant is unaware may cause disruption of his life by affecting his credit rating, job applications, admission to schools and other activities in which background checks are routine." (*Serna* v. *Superior Court, supra,* 40 Cal.3d at p. 261.) The record does not disclose whether such considerations were trivial or important in this case.

*Conclusion*

■ The municipal court committed various errors at the hearing on Ogle's dismissal motion. First, it appeared to reject the concept of presumptive prejudice. Second, because of the first error, the court failed expressly to weigh all factors listed in *Barker* v. *Wingo.* Though the government bore significant responsibility for the long delay, the court refused to consider the government's conduct in the balance. Third, the court's analysis of the prejudice factor—the one factor it did expressly consider—was flawed. Fourth, the court did not decide whether Ogle was aware of the outstanding citation. The absence of an express finding on this point is important because Ogle's knowledge was central to the *Barker* v. *Wingo* balancing process.

Respondent superior court abused its discretion in denying the petition for writ of mandate.

### DISPOSITION

The stay order previously issued by this court is vacated.

Let a writ of mandate issue directing the superior court to issue a writ of mandate directing the municipal court to vacate its order denying Ogle's motion to dismiss, conduct a new hearing on the motion, make appropriate factual findings (*Childress* v. *Superior Court* (1973) 33 Cal.App.3d 99, 103 [108 Cal.Rptr. 774]), and apply the balancing principles of *Barker* v. *Wingo*. (Cf. *Serna* v. *Superior Court, supra*, 40 Cal.3d at p. 264; *Tullis* v. *Superior Court, supra*, 41 Cal.App.3d at p. 396.)

Dibiaso, J., and Buckley, J., concurred.

A petition for a rehearing was denied April 15, 1992.