[No. D019579. Fourth Dist., Div. One. Jan. 19, 1994.]

MICHAEL JOHN STABIO, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Francis J. Bardsley, Public Defender, Gary R. Nichols and Roy Spencer, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and James E. Atkins, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WORK, Acting P.** ██ ██ In this case, where the People made no effort to locate Michael John Stabio for prosecution for more than four years after criminal complaints were filed, we examine whether the lengthy delay between the filing of the complaint and Stabio's arrest violated his federal and state constitutional rights to a speedy trial.

As we shall explain, we conclude Stabio has met the applicable four-part test set forth in *Barker* v. *Wingo* (1972) 407 U.S. 514, 530-532 [33 L.Ed.2d 101, 116-118, 92 S.Ct. 2182]. The lower court found Stabio had satisfied the first three parts of the test. With respect to the last part of the test, prejudice, the delay quadrupled the period deemed "generally sufficient" to create a presumption of prejudice for purposes of the speedy trial inquiry. (*Doggett* v. *United States* (1992) 505 U.S. __ [120 L.Ed.2d 520, 532, 112 S.Ct. 2686, 2694].) At the same time, it surpassed by more than a full year the governing statute of limitations for the crime charged. Because the protracted delay gave rise to a strong presumption of prejudice which was neither "extenuated" by Stabio's acquiescence nor meaningfully rebutted by the People

(*ibid.*), we hold Stabio has satisfied the fourth part of the test and is relieved of the burden of showing particularized prejudice. Accordingly, we issue a writ of mandate directing the trial court to vacate its order denying the motion to dismiss and enter an order granting the dismissal consistent with this opinion.

## Factual and Procedural Background

In December 1988, the People filed a complaint charging Stabio with two counts of felony grand theft occurring in 1988.[1] In January 1993, more than four years later, Stabio was arrested outside his home in Salinas. It is undisputed that between complaint and arrest:

Stabio resided continuously in California, the last two and one-half years at the same address in Salinas; Stabio registered vehicles with the California Department of Motor vehicles (DMV) in April 1989, January 1990, November 1990, May 1991, October 1991 and October 1992; Stabio had both a driver's license and an identification card from the DMV; Stabio registered to vote and filed a change of address to reflect his current address with the registrar of voters in Salinas in 1991; between November 1990 and June 1991, Stabio applied for and received unemployment compensation benefits; Stabio has been employed by the same company since July 1991 and pays social security; Stabio filed state and federal income taxes in 1989, 1990, 1991 and 1992; Stabio was cited by the police for a vehicle violation in January 1989; and Stabio reported a missing wallet to the Salinas Police Department. At no time was Stabio aware there were outstanding warrants against him.

Stabio moved to dismiss the complaint in municipal court, arguing a delay of more than four years between complaint and arrest violated his speedy trial rights. After hearing the testimony, the municipal court judge found the evidence was insufficient to establish that Stabio knew or should have known criminal charges were pending against him, and Stabio had not waived his right to a speedy trial. Moving into the speedy trial analysis, the court explained:

"The first issue that the court has to look at is whether or not the delay was so long as to raise a presumption of prejudice for a defendant, and the cases are very clear that somewhere between eight months and a year, you pass over the threshold and that the presumption of prejudice arises. That threshold has been met in this case because we're just past four years from

---

[1]Stabio was charged with stealing personal property in excess of $400 (welding tools and equipment) in July 1988 and November 1988.

the time of filing of the complaint to the arrest in this case. So the defendant has met the first step on this, and that is that the delay was uncommonly long.

"The second issue, then, that the court has to look at is the reasons for the delay. One of the reasons for the delay was that the defendant was gone from the County of San Diego by everybody's admission in this case. Other than that, the court does not know any reason for a delay. There was no evidence presented by the People as to efforts to find the defendant by law enforcement. The testimony from the defendant is that he was able to be found if somebody had been looking for him. There is nothing to controvert his testimony that he had registered various vehicles and had numerous other contacts with governmental agencies for various reasons.

"It does appear to the court that in balance, the reasons for the delay in prosecution here . . . fall on the government's side of this because there is no evidence whatsoever about governmental efforts to pursue Mr. Stabio. So on that prong of the four-way test, Mr. Stabio comes out on top of that. So he's met the first two steps here.

"The third is did the defendant assert timely his right to speedy trial, and there is no contest on that. He did in fact raise that issue at the earliest possible time. So he has met the first three steps now.

"The fourth step is did the defendant suffer actual prejudice because of the delay. We have reached the point with Mr. Stabio's case where there is a presumption of prejudice because of the delay. The next thing, then, the court needs to get into is whether or not there was actual prejudice. I did read through the cases very carefully on whether the presumption of prejudice is sufficient for the defendant, if he can rely on that alone, and particularly in this *Beamon* case, which just came out from the Ninth Circuit, this issue is discussed in great depth. In the *Beamon* case, the court indicates that while the government's negligence . . . was long enough to trigger a speedy trial inquiry, the delay was not sufficient to excuse the defendant altogether from any showing of actual prejudice."

The court concluded the *United States* v. *Beamon* (9th Cir. 1993) 992 F.2d 1009 decision required a showing of actual prejudice. However, since the only "actual" prejudice argued was Stabio's inability to recall events clearly enough to assist in his defense and the court was impressed with Stabio's memory of when he left the machine shop in Oceanside, where he lived,

when he applied for unemployment, when he changed jobs and the like, the motion was denied.

After being bound over to superior court, Stabio filed a motion to dismiss the information. The superior court allowed some additional testimony and accepted the transcript from the municipal court hearing.

Like the municipal court, the trial court found: the People had no adequate justification for the delay; Stabio asserted his speedy trial rights at the earliest time possible; and the four-year delay was presumptively prejudicial. The trial court nevertheless denied the motion to dismiss, reasoning: (1) Stabio had to demonstrate actual prejudice because the evidence showed he knew or should have known criminal charges were pending against him, and (2) Stabio's memory defeated his argument for actual prejudice.

Stabio petitioned for a writ of mandate from the order denying his motion to dismiss the information. We stayed the trial and issued an order to show cause.

## DISCUSSION

The Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution guarantee the accused the right to a speedy trial. ■ The federal speedy trial right is triggered when the defendant is accused—when a formal indictment or information is filed, or the defendant is arrested. (*United States* v. *Marion* (1971) 404 U.S. 307, 318-320 [30 L.Ed.2d 468, 478-479, 92 S.Ct. 455].) In California, the right attaches when the criminal complaint is filed. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203].)

Once the constitutional right attaches, we evaluate asserted violations by the four-part test in *Barker* v. *Wingo, supra*, 407 U.S. at pages 530-532 [33 L.Ed.2d at pages 116-117]. The test includes "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether [the defendant] suffered prejudice" because of the delay. (*Doggett* v. *United States, supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 528, 112 S.Ct. at p. 2690].)

Stabio had no difficulty satisfying the first two factors: the trial court determined the delay was long—long enough to give rise to a presumption

of prejudice—and there was no adequate justification for the delay on the government's part. The court also found Stabio asserted his right at the earliest opportunity.

The disputed issue here is the fourth factor *Barker* v. *Wingo* requires, prejudice, specifically, when a defendant has the burden to demonstrate actual prejudice. In *Doggett* v. *United States*, *supra*, 505 U.S. __ [120 L.Ed.2d 520, 112 S.Ct. 2686], the United States Supreme Court addresses the issue.

Doggett was indicted on drug charges in February 1980 but left the country before the Drug Enforcement Agency (DEA) could arrest him. The DEA knew Doggett was imprisoned in Panama and requested his return to the United States. Later, it accidentally discovered that Doggett was in Colombia. The DEA made no further attempts to locate Doggett and let him slip through the cracks.

Meanwhile, in September 1982, Doggett openly returned to the United States, going through customs without difficulty. He got married, graduated from college, found steady employment, lived under his own name and had no trouble with the law. In September 1988, the marshal's service ran a credit check on several thousand individuals subject to outstanding warrants. Doggett's address turned up immediately and he was arrested.

The trial court denied Doggett's motion to dismiss for denial of a speedy trial because he made no showing the delay had impaired his ability to mount a successful defense or otherwise prejudiced him.

The Supreme Court reversed, concluding Doggett had satisfied the first three *Barker* v. *Wingo* factors—i.e., (1) the eight-and-one-half-year delay between the indictment and arrest was presumptively prejudicial, (2) government negligence was to blame, and (3) there was no evidence in the record to suggest Doggett knew of his indictment before he was arrested.[2] (*Doggett* v. *United States*, *supra*, 505 U.S. at p. __ [120 L.Ed.2d at pp. 528-529, 112 S.Ct. at p. 2691].) This left only the issue of prejudice. Conceding Doggett had "come up short" on showing that the delay weakened his ability to raise certain defenses, elicit testimony or produce particular items of evidence (*Doggett* v. *United States*, *supra*, 505 U.S. at p. __ [120

---

[2]In March 1980, the police attempted to arrest Doggett at his parents' home, only to be told by Doggett's mother that he left for Colombia four days earlier. (*Doggett* v. *United States*, *supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 537, 112 S.Ct. at p. 2698].) At the hearing on the speedy trial motion, however, the government did not introduce any evidence to dispute the testimony of the mother that she had not told Doggett or anyone else the police had come looking for him, or the testimony of Doggett's wife that she did not know of the charges until the arrest. (*Id.* at p. __ [120 L.Ed.2d at pp. 528-529, 112 S.Ct. at p. 2691].)

L.Ed.2d at pp. 529-530, 112 S.Ct. at p. 2692]), the Supreme Court refused to limit prejudice to that which is specifically demonstrable, explaining: "*Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' [Citation.] And though time can tilt the case against either side [citation], one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria [citation], it is part of the mix of relevant facts, and its importance increases with the length of delay." (*Doggett* v. *United States*, *supra*, 505 U.S. at p. ___ [120 L.Ed.2d at pp. 530-531, 112 S.Ct. at pp. 2692-2693].)

The court proceeded to evaluate the prosecutorial significance of different kinds of delay. It placed justifiable delay at one end of the scale, bad faith delay at the other and official negligence in between. (*Doggett* v. *United States*, *supra*, 505 U.S. at p. ___ [120 L.Ed.2d at p. 531, 112 S.Ct. at p. 2693].) Reversing denial of Doggett's speedy trial claims, the court stated:

"*Barker* made it clear that 'different weights [are to be] assigned to different reasons' for delay. [Citation.] Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness [citation], and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

"To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious

persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8-1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary.' [Citation.] When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence [citation], nor persuasively rebutted, the defendant is entitled to relief." (*Doggett* v. *United States, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 531-532, 112 S.Ct. at pp. 2693-2694], fns. deleted.)

The Ninth Circuit decided two cases on the heels of *Doggett—United States* v. *Shell* (9th Cir. 1992) 974 F.2d 1035, and *United States* v. *Beamon, supra,* 992 F.2d 1009. In *Shell,* the defendant was indicted in 1984 for a 1978 passport violation; the government misplaced the file and made no attempt to locate Shell between 1984 and 1989; and Shell was ultimately arrested in 1990 after the government initiated a new search. The Ninth Circuit reevaluated the case[3] under *Doggett* where "[t]he [Supreme] Court modified the *Barker* v. *Wingo* . . . four-part test, and held that no showing of prejudice is required when the delay is great and attributable to the government." (*United States* v. *Shell, supra,* 974 F.2d at p. 1036.) Holding the five-year delay attributable to the government's mishandling of Shell's file "create[d] a strong presumption of prejudice" which was not "persuasively rebutted" despite Shell's apparent concession that most essential witnesses and documentary evidence were still available, the Ninth Circuit upheld Shell's dismissal. (*Ibid.*)

In *Beamon,* on the other hand, the Ninth Circuit determined delays between the indictment and arrest for 2 defendants—a 17-month delay in the case of Beamon and a 20-month delay in the case of codefendant McMillin—were "presumptively prejudicial" so as to prompt the initial speedy trial right inquiry. (*United States* v. *Beamon, supra,* 992 F.2d at p. 1013.) Measured against the eight and one-half years in *Doggett* and five years in *Shell,* however, the delays were "not sufficient to excuse the defendants altogether from any showing of actual prejudice." (*United States* v. *Beamon, supra,* 992 F.2d at p. 1015.) The court explained: "Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case—only a few months longer than the minimum [one-year benchmark in

---

[3]Originally rejecting the speedy trial claim on the ground that Shell had not demonstrated actual prejudice, the Ninth Circuit granted a rehearing after *Doggett* was decided. (*United States* v. *Shell, supra,* 974 F.2d at p. 1036.)

*Doggett*]—were sufficient as a matter of law to relieve the defendant of any burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebutable. It is clear from *Doggett*'s balancing approach that the Court did not intend such a bright line rule." (*United States* v. *Beamon, supra,* 992 F.2d at p. 1014.)

Here, we have a delay of four years and one month during which the People concede there was a total lack of law enforcement effort to locate or apprehend Stabio. This is a period considerably longer than the 17 to 20 months in *Beamon,* but on the short side of the 5 years in *Shell.* Stabio argues his case is closer to *Shell* than it is to *Beamon.* The People, to the contrary, contend (1) there was substantial evidence to support the trial court's finding that Stabio knew or should have known criminal charges were pending against him given the government's proof of "not one but two virtually identical thefts committed by [Stabio] under circumstances which he must have known pointed to him and only him as the suspect"; (2) when this "proof" is added to the *Barker* v. *Wingo* mix, the onus of demonstrating actual prejudice falls on Stabio; and (3) Stabio's clear memory of events over the last four years defeats actual prejudice.

There are difficulties with the People's approach. First, the issue of whether a defendant is aware a complaint has been filed goes to the third *Wingo* factor, whether he timely asserted a Sixth Amendment right to speedy trial, not the fourth factor, prejudice. (See *Ogle* v. *Superior Court* (1992) 4 Cal.App.4th 1007, 1021-1022 [6 Cal.Rptr.2d 205].) Here, the trial court expressly found Stabio "preserved his right to a speedy trial at the earliest time possible," a finding that the third *Wingo* factor was satisfied.

Second, the government introduced no evidence to refute Stabio's testimony that he was unaware of the charges and there is no objectively identifiable evidence to the contrary.

Third, we reject the People's theory that Stabio's relationship to the two so-called "identical" thefts demonstrates that Stabio must have known circumstances "pointed to him and only him as the suspect"[4] and is chargeable with constructive knowledge that a criminal complaint was on file. There is no evidence in the record to support the trial court's conclusion that Stabio

---

[4]The case put forward by the People was simply: (1) someone stole tools from two different welding shops without forcibly entering either shop; (2) Stabio worked at the first shop and had a key; (2) Stabio did odd jobs for meals at the second shop for a few days while living out of his truck and before heading north; and (3) on both occasions, Stabio left the area at approximately the time of the theft.

should have known of the pending criminal charges.[5] Further, although the decision in *Ogle* v. *Superior Court, supra,* 4 Cal.App.4th at page 1021 mentions casually whether Ogle "knew or *constructively* knew of the pending case," it goes to hold that "if Ogle did not *know* of the pending case, his failure to assert his right would be excused." (*Ogle* v. *Superior Court, supra,* 4 Cal.App.4th at p. 1021, italics added.) *Ogle* cites no authority for its oblique reference to "constructive" knowledge and *Doggett* speaks in terms of actual awareness. In any event, there is no evidence of constructive knowledge in this case.

Finally, good memory alone will not turn back the clock. As the Supreme Court acknowledges, "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown'." (*Doggett* v. *United States, supra,* __ U.S. at p. __ [120 L.Ed.2d at pp. 530-531, 112 S.Ct. at pp. 2692-2693], citing *Barker* v. *Wingo, supra,* 407 U.S. at p. 532 [33 L.Ed.2d at pp. 117-118].) Even if we were to assume Stabio had total recall, witnesses become increasingly difficult to locate over time and, if found, their memories may be hazy at best on events that took place on a particular day now five years ago.

In conclusion, this case is closer to *Doggett* and *Shell* than *Beamon.* Measured by the one-year benchmark applied in *Doggett,* the government's negligence quadruples the delay that the Supreme Court labels "generally sufficient" to trigger a speedy trial claim of right. (*Doggett* v. *United States, supra,* __ U.S. at p. __ [120 L.Ed.2d at p. 532, 112 S.Ct. at p. 2694].)

While one year may not be the proper measure in every case, it certainly appears to be proper here where the crime is a felony-misdemeanor (see 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 565, p. 643) and, if charged as a misdemeanor, prejudice would be presumed and dismissal required without any further showing since the delay was unjustified and exceeded the one-year statute of limitations on misdemeanors (see *Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 252 [219 Cal.Rptr. 420, 707 P.2d 793]). In fact the delay here surpassed even the three-year statute of limitations on the felonies as charged.

■ The statute of limitations is "a societal declaration that [the government] will no longer pursue a criminal after a certain period of time." (1

---

[5]The trial court's conclusion that Stabio was on notice of the pending charges, gleaned from reading the transcript, is inconsistent with the municipal court's findings after hearing the testimony that the evidence failed to show Stabio knew or should have known criminal charges were pending.

Witkin & Epstein, Cal. Criminal Law, *supra*, Defenses, § 363, p. 418, citing Recommendation Relating to Statutes of Limitation for Felonies, (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) p. 301 et seq.) It represents "an outside limit that recognizes the staleness problem, that requires that crime must come to light and be investigated within a reasonable time, and that represents the point after which society declares it no longer has an interest in prosecution and seeks repose." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, at p. 418.) ■ The statute of limitations is entitled to great weight in any speedy trial inquiry, and here—where law enforcement did not even make a minimal effort to locate Stabio from information in the public records—four years of inactivity is simply too protracted to put the onus of showing particularized prejudice on the defendant. Adding in, as we explained above, that the presumption of prejudice was "not extenuated" by Stabio's acquiescence or "persuasively rebutted" by the People (*Doggett* v. *United States*, *supra*, 505 U.S. at p. __ [120 L.Ed.2d at p. 532, 112 S.Ct. at p. 2694]), we conclude the motion to dismiss was improperly denied.

### DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order denying the motion to dismiss and enter a new order granting the dismissal consistent with this opinion.

Todd, J., and Nares, J., concurred.