[No. A120768. First Dist., Div. Four. Nov. 18, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN YUNG YUEN HSU, Defendant and Appellant.

## COUNSEL

Morrison & Foerster, James J. Brosnahan, Somnath Raj Chatterjee and Eva K. Schueller for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, and Martin S. Kaye, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I.  INTRODUCTION

On February 6, 1992, pursuant to a negotiated disposition, Norman Yung Yuen Hsu (Hsu) entered a no contest plea to one count of grand theft (Pen. Code, §§ 484, former 487, subd. 1). Shortly thereafter, he failed to appear for sentencing. By the time he was arrested and returned to California, some 15 years later, the judge who initially took Hsu's plea in this matter had retired from the bench and was unavailable to impose sentence. Thereafter, Hsu was brought before a different judge to be sentenced. At sentencing, the judge followed the terms of the original 1992 plea bargain and sentenced Hsu to a three-year state prison term, with victim restitution to be determined in future proceedings.

On appeal, Hsu contends error in two of the court's presentencing rulings. First, he claims the trial court erred in denying his motion to dismiss the charges against him because the 15-year delay in sentencing violated his constitutional right to a speedy trial. (U.S. Const., 6th Amend.) Secondly, he claims the trial court erred in denying his motion to withdraw his plea because he was not sentenced by the same judge who took his original plea, in violation of *People v. Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220] (*Arbuckle*).[1]

We affirm the judgment.

## II.  FACTS AND PROCEDURAL HISTORY

On December 4, 1991, an information was filed in the San Mateo County Superior Court charging Hsu with 16 counts of grand theft and enhancing allegations. The charges emanated from Hsu's business dealings, which were described by the prosecution as "a pyramid or 'Ponzi' scheme," whereby Hsu solicited multiple investors by posing as the owner of a company that bought and sold apparel at a profit. Hsu never engaged in any legitimate business activity. Instead, he simply paid a return to earlier investors with money obtained from later investors. The scheme collapsed in 1990 when Hsu was

---

[1] Hsu's claim that he was entitled to be sentenced by the judge who originally took his plea in 1992 is derived from *Arbuckle, supra,* 22 Cal.3d 749, where the Supreme Court stated: "As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge." (*Id.* at pp. 756–757.)

unable to recruit new investors and he ran out of money to continue making payments.

On February 6, 1992, pursuant to a negotiated disposition, Hsu entered a no contest plea before Judge Aram Severian to one count of grand theft (Pen. Code, §§ 484, former 487, subd. 1), with an admission of taking in excess of $100,000 (Pen. Code, § 12022.6, subd. (b)). A copy of the change of plea form filed on February 6, 1992, provides that Hsu would be sentenced to an aggravated term of "[t]hree years state prison; remaining counts dismissed; Harvey Waiver as to dismissed counts for sentencing & restitution."[2] The change of plea form indicates Hsu refused to waive his "right to be sentenced by the judge taking my plea . . . ." Hsu was represented during the plea negotiations by Attorney Linda Bramy.

Hsu was to be sentenced on April 7, 1992. On that date, Attorney Anthony Gibbs appeared in court on Hsu's behalf, indicating he had recently been retained to represent Hsu and asking that the sentencing hearing be continued. Hsu's sentencing hearing was continued to May 1, 1992, and then again to June 10, 1992.

On June 10, 1992, Hsu failed to appear for sentencing before Judge Severian. Mr. Gibbs provided the court with a handwritten note from Hsu. The note indicated that Hsu had gone to Boston to take care of a personal matter and would return the following Monday; however, Hsu did not return for sentencing. Judge Severian forfeited the bail that had been posted, and issued a bench warrant with bail set in the amount of $2 million.

Hsu originally fled to Asia but he returned to the United States around 2003. Hsu made no effort to hide his identity, and despite his fugitive status, records indicate he made frequent and notably large donations to dozens of political candidates. He became a regular fixture at political and philanthropic fundraisers in New York and California. In the meantime, Judge Severian, the judge who had taken Hsu's plea, retired from the bench in December 2000.

In 2007, Hsu learned that he was about to be arrested on the old 1992 California bench warrant. Before he could be arrested, Hsu arranged for his surrender on August 31, 2007. He appeared in court and posted $2 million

---

[2] Because Hsu's change of plea hearing took place in 1992, many of the pertinent records are no longer available. For instance, there is no reporter's transcript from the 1992 plea hearing. However, the precise terms of the plea are evidenced by the change of plea form, Judge Severian's notes regarding the plea, and the probation report prepared for the original sentencing hearing. All of these documents support the trial court's finding that the 1992 plea agreement was for a fixed three-year sentence, not a sentence of up to three years as argued by Hsu.

cash bail. On September 5, 2007, Hsu once again failed to report for sentencing. A no-bail bench warrant was issued for Hsu's arrest.

On or about September 6, 2007, Hsu became ill while riding on an Amtrak train traveling from California to Denver, Colorado. Hsu was removed from the train and taken to a hospital in Grand Junction, Colorado. Later that day, FBI agents arrested Hsu pursuant to a warrant charging him with unlawful flight to avoid prosecution. On September 20, 2007, Hsu was extradited from Colorado to California.

During the course of these renewed proceedings, Hsu filed a motion claiming he was entitled to dismissal of the charges because the 15-year delay in sentencing, when authorities could have easily found and arrested him, violated his constitutional right to a speedy sentencing. Additionally, Hsu filed a motion asserting that he was entitled to withdraw his plea under *Arbuckle* and its progeny because he would not be sentenced by the same judge who had accepted his plea, in violation of an express term in the written plea agreement.

On January 4, 2008, Judge Stephen Hall denied these motions and sentenced Hsu to the bargained-for term of three years in state prison, with all the other counts and enhancements dismissed. The court imposed a restitution fine of approximately $200 but held $1 million of the bail posted by Hsu pending final determination of victim restitution.[3] (Gov. Code, former § 13967, subd. (c).)

This appeal followed.

## III. DISCUSSION

### A. Hsu's Right to Speedy Sentencing

■ Hsu challenges the trial court's denial of his motion to dismiss the charges against him, arguing that the more than 15-year delay between his no contest plea and his sentencing violated his Sixth Amendment right to a speedy trial. (U.S. Const., 6th Amend.)[4] It is well settled that "the right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the

---

[3] As of the time of the briefing of this appeal, the precise amount of victim restitution, which the court held was not to exceed $996,020, was the subject of future proceedings. At sentencing, Hsu personally waived his right to be present at any future restitution proceedings.

[4] Hsu filed a petition for writ of mandate with this court, *Hsu v. Superior Court* (Nov. 18, 2008, A120818), raising the exact speedy sentencing violation that he raises in this appeal to preserve this issue in case this court determines it is not cognizable on appeal. We find this issue can be raised on appeal without a certificate of probable cause because it involves

Fourteenth Amendment on the States." (*Barker v. Wingo* (1972) 407 U.S. 514, 515 [33 L.Ed.2d 101, 92 S.Ct. 2182], fn. omitted (*Barker*).)

Preliminarily, the parties disagree over whether the right to a speedy trial includes the right to a speedy imposition of sentence. The trial court believed Hsu had the right to a speedy sentence, and this view has support. (See *Pollard v. United States* (1957) 352 U.S. 354, 361 [1 L.Ed.2d 393, 77 S.Ct. 481] [assuming arguendo that the "sentence is part of the [criminal] trial for purposes of the Sixth Amendment"]; see *People v. Broughton* (2003) 107 Cal.App.4th 307, 319 [133 Cal.Rptr.2d 161] ["The fundamental policies advanced by speedy trial statutes . . . apply to defendants who have not been afforded a sentencing hearing . . ."].) We need not address this issue because, even were we to conclude that Hsu had a Sixth Amendment right to speedy sentencing, he has failed to establish a violation of that right.

■ In considering the matter below, the trial court first applied standard waiver doctrine to Hsu's motion, finding that Hsu waived his right to a speedy sentence by failing to appear for his originally scheduled sentencing hearing and remaining at large for 15 years. Hsu does not dispute that he fled in order to avoid being sentenced in this case, and there is certainly authority supporting the proposition that a fugitive defendant may not complain of delay caused by his deliberate evasion of the court's process. (See *People v. Perez* (1991) 229 Cal.App.3d 302, 308 [279 Cal.Rptr. 915] [defendant who flees jurisdiction of court for the purpose of avoiding prosecution waives right to a speedy trial]; see also *U.S. v. Sandoval* (9th Cir. 1993) 990 F.2d 481, 484–485 (*Sandoval*) ["If, however, the delay is attributable to the defendant, standard waiver doctrine applies. [Citation.]"]; *U.S. v. Blanco* (2d Cir. 1988) 861 F.2d 773, 780 ["Coming from a former fugitive, Blanco's claim that her right to a speedy trial was denied carries almost no weight."]; *U.S. v. Manning* (9th Cir. 1995) 56 F.3d 1188, 1195 (*Manning*) ["If the delay can be attributed to Manning himself, he will be deemed to have waived his speedy trial rights entirely. [Citations.]"]; *U.S. v. Aguirre* (9th Cir. 1993) 994 F.2d 1454, 1457, fn. 5 (*Aguirre*) [in cases where defendants take affirmative steps to elude law enforcement "a finding of waiver is proper . . ."].)

■ However, acknowledging that some courts have found that a defendant's flight is simply one of several pertinent factors which must be considered as part of the court's speedy trial inquiry, the trial court went ahead and conducted the balancing test set forth in *Barker*, "whereby the conduct of

---

postplea matters not challenging the plea's validity. (Pen. Code, § 1237.5; Cal. Rules of Court, rule 8.304(b).) Consequently, resolution of the issue on appeal renders Hsu's writ moot and we deny it for that reason.

*both* the prosecution and the defendant are weighed" to determine if there has been a constitutional violation. (*Rayborn v. Scully* (2d Cir. 1988) 858 F.2d 84, 89, original italics (*Rayborn*).) Specifically, the trial court indicated "[t]here really isn't any need to proceed further with any balancing, however, even if I were to go forward and conduct a balancing test in this case, it is the defendant's responsibility for the delay which carries the day here."

Out of an abundance of caution, we too apply the four-part analysis of *Barker*, as amplified in *Doggett v. United States* (1992) 505 U.S. 647, 651 [120 L.Ed.2d 520, 112 S.Ct. 2686] (*Doggett*), to Hsu's speedy sentencing claim. A claim that the state has violated this constitutional guarantee is a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long," (2) "whether the government or the criminal defendant is more to blame for that delay," (3) "whether, in due course, the defendant asserted his right to a speedy trial," and (4) "whether he suffered prejudice as the delay's result." (*Doggett, supra*, 505 U.S. at p. 651, citing *Barker, supra*, 407 U.S. at p. 530.)

The first step in this balancing test, the length of the delay, is the triggering factor because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." (*Barker, supra*, 407 U.S. at p. 530; see *Doggett, supra*, 505 U.S. at pp. 651–652.) This first prong of the *Barker* test is not disputed in the case before us because respondent concedes a 15-year delay is long enough to be "presumptively prejudicial."

Next, we must identify the reason for the delay. (*Barker, supra*, 407 U.S. at p. 531.) This is a subject of great dispute between the parties. Hsu claims the delay in his sentencing must be attributed to the government, which he claims failed to make any serious efforts to apprehend him. Hsu asserts: "At least since 2003" when he returned to the United States from Hong Kong he "led a very visible and public life using his own identity. He did not act like a fugitive. He did not evade the authorities, but rather openly associated with highly public politicians."

Respondent admits the government made only cursory efforts to locate Hsu after he returned to the United States in 2003 by periodically checking Hsu's last known address, his wife's home address, and his son's school. Nevertheless, respondent claims that "[Hsu]'s flight, including leaving the United States for Hong Kong for approximately 10 years" was the principal cause for the delay.

■ While it is unclear how Hsu could have engaged in such prominent political activity without being detected, we conclude that Hsu's flight to avoid being sentenced must be weighed more heavily than the ensuing failure of the government to apprehend him. Hsu's argument that the delay in sentencing was the government's fault because it declined to expend larger amounts of time and investigative resources to locate him is flawed. As recognized by the court in *Sandoval, supra,* 990 F.2d at page 485, "There is no requirement that law enforcement officials 'make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.' " (Quoting *Rayborn, supra,* 858 F.2d at p. 90.) According to the prosecutor's declaration filed in this case, "at any given time there are more than 100,000 arrest and bench warrants outstanding in California." Implicit in *Sandoval*'s holding is the recognition that the government should have discretion concerning how to allocate its finite investigative resources and that it cannot be expected to pursue each of these 100,000 individuals with the effort it might expend to capture, for example, a serial killer.

We acknowledge decisions such as *Rayborn, supra,* 858 F.2d at page 90, and cases cited therein, which appear to establish a duty "to exercise due diligence in attempting to locate and apprehend the accused . . . ." We believe imposing such a duty makes sense in cases where a defendant cannot appear of his own volition because he is imprisoned elsewhere (*Smith v. Hooey* (1969) 393 U.S. 374, 382–383 [21 L.Ed.2d 607, 89 S.Ct. 575]; *Barker v. Municipal Court* (1966) 64 Cal.2d 806, 814 [51 Cal.Rptr. 921, 415 P.2d 809]; *People v. Mitchell* (1972) 8 Cal.3d 164, 167 [104 Cal.Rptr. 348, 501 P.2d 916]), or because he is unaware of the pending charges (*Doggett, supra,* 505 U.S. at p. 653; *Ogle v. Superior Court* (1992) 4 Cal.App.4th 1007, 1021–1022 [6 Cal.Rptr.2d 205] (*Ogle*)), or because he lacks the financial resources to return to the prosecuting jurisdiction (*United States v. Salzmann* (E.D.N.Y. 1976) 417 F.Supp. 1139, 1155).

However, we agree that "[f]rom the perspective of the administration of criminal justice, it makes no sense to hold out to fugitive defendants" like Hsu who are aware of the pending charges and fully able to appear in court "the possibility that, if the prosecution failed to pursue them diligently enough, the charges against them might be dismissed. Such a ruling *encourages* defendants to become fugitives." (Green, *"Hare and Hounds": The Fugitive Defendant's Constitutional Right to Be Pursued* (1990) 56 Brook. L.Rev. 439, 488, fn. omitted.) Given Hsu's flight to avoid sentencing and his awareness that the matter was pending, "[e]ven when the government can offer no good reason to justify the delay, in a given case the defendant's own conduct may defeat his claim." (*Ogle, supra,* 4 Cal.App.4th at p. 1021.) Such is the case here.

The third *Barker* factor is the defendant's invocation of the right to a speedy trial. (*Barker, supra*, 407 U.S. at pp. 531–532; *Doggett, supra*, 505 U.S. at pp. 653–654.) In *Doggett*, the defendant was indicted on drug charges shortly before he left the country, and the record did not establish he knew of the indictment. The Supreme Court observed that if it was established that the defendant had known of his indictment before he fled, "*Barker*'s third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him." (*Doggett, supra*, 505 U.S. at p. 653.) Similarly, in *Ogle, supra*, 4 Cal.App.4th at page 1021, the court stated that if it were shown that the defendant "knew or constructively knew of the pending case, his failure to assert his right might well be dispositive."

Given Hsu's undeniable knowledge of his pending sentencing hearing, he could have returned to San Mateo County and demanded his right to be sentenced at any point during his 15-year absence from these proceedings. Instead, he waited until after he was arrested on the bench warrant in 2007 to assert his right to a speedy sentence. Focusing on *Barker*'s balancing framework, Hsu's failure to assert his right to be sentenced for so many years weighs strongly against him. (*Barker, supra*, 407 U.S. at p. 536 ["barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional [speedy trial] right on a record that strongly indicates . . . that the defendant did not want a speedy trial"].)

The fourth *Barker* factor is prejudice from the delay. (*Barker, supra*, 407 U.S. at pp. 532–533; *Doggett, supra*, 505 U.S. at pp. 654–658.) Given our conclusion that Hsu is responsible for the delay in his sentencing, he bears the burden of demonstrating actual prejudice under the fourth *Barker* criterion. (*Manning, supra*, 56 F.3d at p. 1195.) As the court stated in *Aguirre, supra*, 994 F.2d at page 1457, "*Doggett* holds that we should presume prejudice only if the defendant isn't responsible for the delay." If, on the other hand, the defendant is responsible for the delay, then he carries the heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim. (*Ibid.*)[5] We agree with the trial court that no evidence supports a finding that Hsu has been prejudiced by the delay. Because this case involves the imposition of the terms of a plea bargain, Hsu cannot plausibly claim that his ability to wage a defense against stale charges has been impaired by the passage of time. As far as Hsu's assertion that he will be prejudiced in the upcoming restitution hearings, it is safe to assume that the prosecution's case has been impaired as much as, or more than, Hsu's case. Therefore, the fourth *Barker* factor—prejudice to the defendant—weighs against Hsu.

[5] Hsu claims "[t]he trial court erred in requiring [Hsu] to show actual prejudice in support of his speedy trial claims." Given this case law, the trial court's determination that Hsu was required to show prejudice was unquestionably correct.

■ Even if Hsu's flight cannot be considered an outright waiver of his Sixth Amendment speedy trial rights, balancing the *Barker* factors convinces us that the trial court correctly found that this right was not violated under the facts of this case.

### B. Hsu's Right to Be Sentenced by the Same Judge Who Accepted His Plea

Hsu alternatively claims the trial court erred in refusing to allow him to withdraw his 1992 no contest plea because the judge who accepted his plea was unavailable for sentencing. In denying his motion, the trial court observed, "Judge Severian is unavailable because he retired some eight years after the defendant had failed to appear at the date and time of the scheduled [sentencing] hearing. His retirement is beyond the control of the Court, and . . . in this particular case under its unique facts and circumstances, it would be unfair to use that as a basis to . . . somehow nullify this plea."

■ As previously noted (*ante*, fn. 1), the court in *Arbuckle* held that a defendant who enters a guilty plea before a particular judge may be entitled, as an implied term of the plea bargain, to be sentenced by that same judge. As stated by the *Arbuckle* court, "[W]henever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea. [Citations.]"[6] (*Arbuckle, supra*, 22 Cal.3d at pp. 756–757.) The *Arbuckle* court held that if the court's internal administrative practices, such as rotating judges through different departments, rendered it impossible for the defendant to be sentenced by the same judge who accepted the plea bargain, the defendant should be permitted to withdraw his guilty plea. (*Ibid.*)

There can be little doubt that Hsu's original 1992 plea bargain included an *Arbuckle* term. As evidenced by the change of plea form filed on February 6, 1992, which set out all of the pertinent terms of the plea agreement, Hsu indicated "I *do not* waive my right to be sentenced by the judge taking my plea . . . ." (Italics added.) This language indicates that Hsu's change of plea was entered into with the expectation that Hsu's sentence and victim restitution would be imposed by Judge Severian, the same judge who took his no contest plea to grand theft.

---

[6] For purposes of this opinion, we assume, without deciding, that the calculation of the amount of victim restitution involves the judge's discretion in electing from a variety of dispositions, bringing it within the scope of *Arbuckle*.

The question is whether Hsu can rely on the unavailability of Judge Severian as grounds to withdraw his plea when the judge's unavailability was the result of Hsu's failure to appear at the originally scheduled sentencing hearing. After all, the assurance that Judge Severian would be the sentencing judge would have been satisfied had Hsu appeared for sentencing at the time and place contemplated by the plea bargain. Instead, Hsu failed to appear and did not return to court for sentencing until approximately 15 years later, by which time Judge Severian had retired and was no longer on the bench. Under the circumstances of this case, we agree with the trial court that Hsu cannot rely on the fact that the sentencing judge is not the same judge who accepted his plea as a basis to withdraw his plea.

As many courts have recognized, *Arbuckle* does not stand for the blanket proposition that under all circumstances, a defendant is entitled to assert his or her right to have the same judge who presided over the plea hearing also preside over the sentencing hearing. As explained by the court in *People v. Dunn* (1986) 176 Cal.App.3d 572, 575 [222 Cal.Rptr. 273] (*Dunn*), "*Arbuckle* specifically dealt with the situation when 'internal court administrative practices' render it impossible or impracticable for the judge who accepts a defendant's plea to impose the sentence. . . . [¶] While it is established that the implied term of a negotiated plea first recognized by *Arbuckle* will override competing administrative practices of the court, it is clear to us that a negotiated plea does not carry with it an implied promise that the judge accepting the plea will not resign, retire, expire or be removed from the bench pending imposition of sentence. The People appropriately bear the risk of a judge's unavailability due to matters within the control of the court, but no good reason appears why they should bear the risk that the judge before whom defendant [pled] is no longer vested with judicial power to pass sentence. To the implied term recognized by *Arbuckle* that the judge accepting the plea will impose sentence must be added an implied condition: if that judge then still actively exercises judicial power." (Citation omitted.) The *Dunn* court then went on to hold "that *Arbuckle* does not apply in a case where the judge's unavailability is due not to internal administrative problems or convenience of the court but to retirement of the judge, a matter clearly beyond the power of the court to control. [Citation.]" (*Ibid.*)[7]

---

[7] As Hsu points out, *Dunn's* holding has been criticized in *People v. Letteer* (2002) 103 Cal.App.4th 1308 [127 Cal.Rptr.2d 723] (*Letteer*), disapproved on another point in *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1258, footnote 6 [135 Cal.Rptr.2d 639, 70 P.3d 1054]. The *Letteer* court criticized *Dunn* as being inconsistent with *Arbuckle*. (*Letteer, supra,* 103 Cal.App.4th at pp. 1315–1318.) We believe *Letteer's* criticism of *Dunn* is unfounded, and in any event, has little direct impact on our analysis of this case. We point out that *Letteer* involved the failure of an *Arbuckle* condition without the fault of the defendant or the court—the unavailability of the judge who took the defendant's plea was the direct result of the prosecution's exercising a peremptory challenge removing the judge from the case. Consequently, the prosecutor's action caused the defendant to irrevocably lose any benefit the

Similarly, in *People v. Watson* (1982) 129 Cal.App.3d 5 [180 Cal.Rptr. 759] (*Watson*), this division found "absurd" the defendant's assertion that he was entitled to withdraw his guilty plea because the judge who had originally accepted his plea died prior to the imposition of sentence. (*Id.* at p. 8.) The court reasoned that *Arbuckle* speaks only of "situations where the original judge was unavailable for sentencing due to internal administrative scheduling problems" and "it is doubtful whether its mandate would apply when, as here, the judge is unavailable due to his death." (*Id.* at p. 7.)

In *People v. Jackson* (1987) 193 Cal.App.3d 393 [238 Cal.Rptr. 327] (*Jackson*), the court examined a situation analogous to the one before us. In *Jackson*, the defendant attempted to withdraw her waiver of a jury trial on the ground that the judge who had tried her in a court trial, Judge Ricks, was unavailable to impose sentence. Like Hsu, the defendant in *Jackson* failed to appear for her first sentencing hearing when Judge Ricks would have been available to sentence her. (*Id.* at p. 396.) By the time she appeared in response to a bench warrant and was sentenced, Judge Ricks had become ill and was on disability leave and was not expected to return to the bench.

Distinguishing *Arbuckle*, the *Jackson* court refused to allow the defendant to withdraw her waiver, pointing out that "Judge Ricks's unavailability was not due to mere administrative convenience or internal court administrative practices." (*Jackson, supra*, 193 Cal.App.3d at p. 403.) In a particularly apt passage, the court "note[d] that had defendant not failed to appear as ordered on January 21, 1986, for the probation and sentencing hearing scheduled for that date she would in fact have been sentenced by Judge Ricks. The risk of Judge Ricks's unavailability in the first instance must therefore be borne by defendant herself." (*Ibid.*)

Ignoring the import of *Dunn*, *Watson*, and *Jackson*, Hsu steadfastly maintains that he "was entitled to the benefit of his plea agreement—including the term that Judge Severian would impose sentence. And, if that was not possible, [Hsu] was entitled to withdraw his plea." Relying upon *People v. Cruz* (1988) 44 Cal.3d 1247 [246 Cal.Rptr. 1, 752 P.2d 439] (*Cruz*), Hsu boldly proclaims that "[t]he reason that Judge Severian was not available and [Hsu's] 1992 failure to appear at his initial sentencing hearing are both immaterial to [Hsu's] right to withdraw his plea." We find Hsu vastly overstates the *Cruz* holding as it relates to the facts of this case.

defendant might have received from the *Arbuckle* term of his plea bargain, entitling the defendant to withdraw his plea. (*Letteer*, at p. 1321.) The case before us calls for an analysis of whether Hsu is entitled to relief when Hsu himself was responsible for Judge Severian's inability to sentence him. Consequently, *Letteer* is easily distinguishable and provides no rationale for allowing Hsu to withdraw his plea under these circumstances.

In *Cruz*, the defendant pled guilty to possession of heroin pursuant to a negotiated plea agreement in May 1985. "Under the plea bargain, defendant was to receive a maximum five years' probation and up to the 'county lid' of one year in county jail, or the 'low base' sentence of sixteen months in state prison without probation, at defendant's option. In addition, a second count against him . . . was to be dismissed." (*Cruz, supra*, 44 Cal.3d at p. 1249.) The defendant then failed to appear for sentencing. At the sentencing hearing held in February 1986, "the trial court announced its intention not to abide by the plea bargain. Defendant moved to withdraw his guilty plea. The court denied the motion and sentenced defendant to two years in state prison . . . ." (*Ibid.*)

*Cruz* agreed with several appellate opinions which held "that a defendant who fails to appear for sentencing under a plea bargain does not lose the protections of [Penal Code] section 1192.5, and must be allowed to withdraw his or her guilty plea should the court refuse to adhere to the original sentencing terms. [Citations.]"[8] (*Cruz, supra*, 44 Cal.3d at p. 1250.) The court reasoned that a sentencing hearing pursuant to a plea was not the appropriate vehicle for punishing an absconding defendant, pointing out that a person who pleads guilty, and then fails to appear for sentencing, can be separately punished under the failure to appear statutes. (*Id.* at p. 1253.) The court concluded "[t]he imposition of an additional or enhanced sentence for a separately chargeable offense without the benefit of a trial on that charge, and in the absence of a knowing and intelligent waiver, is clearly offensive to the principles of due process." (*Ibid.*)

We find *Cruz* is inapposite to both the legal issues and facts here, and its holding does not bar us from applying the principles set out by the courts in *Dunn*, *Watson*, and *Jackson*. Hsu claims that *Cruz* established an unconditional right to withdraw his plea under Penal Code section 1192.5, notwithstanding his flight and Judge Severian's retirement during the 15 years he was at large, because his plea agreement contained a specific term that he would be sentenced by Judge Severian. However, *Cruz* does not support the interpretation Hsu advances.

*Cruz* simply held that Penal Code section 1192.5 prevented a court from unilaterally imposing a greater sentence than the agreed-upon term specified in the plea agreement as a sanction for a defendant's failure to appear at sentencing. (*People v. Masloski* (2001) 25 Cal.4th 1212, 1217 [108

---

[8] Penal Code section 1192.5 provides in relevant part: "Where [a] plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea."

Cal.Rptr.2d 484, 25 P.3d 681]; *People v. Casillas* (1997) 60 Cal.App.4th 445, 451–452 [70 Cal.Rptr.2d 290].) In contrast to the situation analyzed in *Cruz*, where the absconding defendant lost the benefit of her bargained-for sentence as a punishment for fleeing, it is apparent that the sentencing judge in this case scrupulously followed the terms of the plea agreement in sentencing Hsu to three years in state prison. By imposing the three-year term in accordance with the plea agreement, *Cruz*'s rationale is satisfied because Hsu "got exactly what he bargained for." (*Watson, supra*, 129 Cal.App.3d at p. 7.)

We also point out that *Cruz* manifestly does not deal with the situation before us (as well as before the courts in *Dunn, Watson*, and *Jackson*), where the court considered whether the prosecution loses the benefit of the bargain it struck with the defendant based on a condition—sentencing by the same judge who accepted a guilty plea—which cannot be fulfilled due to circumstances outside the court's or the prosecutor's control. Judge Severian retired from the bench in 2000, and, through no fault of the prosecution or the court, was no longer available to preside at Hsu's sentencing hearing. Crucial to our determination is that fulfillment of this condition remained entirely within Hsu's control, and his failure to appear at the original sentencing hearing brought about the situation which made it necessary to proceed before a judge other than Judge Severian. We believe that when Hsu chose to absent himself from these proceedings for 15 years, he took the risk (if not made the calculation) that the judge who originally took his plea in 1992 would no longer play a judicial role in any future sentencing proceedings. Guided here by the principles and reasoning of *Dunn, Watson*, and *Jackson*, we emphasize that Hsu himself caused the failure of the *Arbuckle* condition, thus precluding him from relying on that condition as grounds to rescind the plea bargain.

To summarize, in a case such as this, involving a defendant who has fled not just once, but twice, to avoid sentencing, we do not think it is a sufficient reason to merit withdrawal of Hsu's no contest plea, that the judge who took his original plea retired from judicial service during the 15-year period during which Hsu absented himself from these proceedings. If we sanctioned such an argument, any defendant who expressly demanded the right to be sentenced by the judge who accepted his or her plea could secure a tactical advantage by entering a plea and then fleeing—hopefully delaying sentencing to such a point where the judge who took the plea was no longer on the bench and a trial on the original charges was unlikely or impossible because the evidence was diminished by the passage of time. Such a ruling would enhance the attractiveness of flight, something we refuse to encourage here.

## IV.  DISPOSITION

The judgment is affirmed.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied December 5, 2008, and appellant's petition for review by the Supreme Court was denied February 18, 2009, S169358. George, C. J., did not participate therein.