Filed 10/4/16  P. v. Vasquez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062862 |
| v. | (Super.Ct.No. INF1400030) |
| VICTOR JEROME VASQUEZ, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed with directions.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

On June 15, 2008, defendant and appellant, Victor Jerome Vasquez, was arrested, cited, and released in Banning, California for driving while under the influence of alcohol (DUI). Between 2008 and 2011, defendant did not appear at four court appearances at the Indio Superior Court, and bench warrants for his arrest were issued at each hearing. Defendant was again arrested for the 2008 DUI on January 2, 2014.

On January 20, 2015, a jury convicted defendant of DUI (Veh. Code, § 23152, subd. (a), count 1), and of driving a vehicle while having "0.08 percent or more, by weight, of alcohol in his . . . blood" based on the 2008 DUI (Veh. Code, § 23152, subd. (b), count 2). After the jury trial, the court found defendant had three prior DUI convictions (Veh. Code, § 23152, subd. (a)) and one prison prior (Pen. Code, § 667.5, subd. (b)) and sentenced defendant to three years in state prison—two years on count 1, and a consecutive one-year term for the prison prior. Defendant was also sentenced to a concurrent two-year term on count 2. Lastly, defendant was sentenced to county jail for 180 days, concurrent to his two-year term on count 1, pursuant to a guilty plea in count 3 to driving a vehicle without a valid driver's license. (Veh. Code, § 12500, subd. (a), count 3.)

On this appeal, defendant contends prosecuting him for the June 2008 DUI offenses "six and a half years[1] after the alleged offenses resulted in a violation of his

_____

[1] Approximately five and a half years passed between the June 2008 DUI offense and the January 2014 arrest and felony complaint. A misdemeanor complaint charging the DUI offenses was filed in August 2008.

2

federal and state rights to a speedy trial." (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) We reject defendant's contention and affirm the judgment with directions to modify defendant's sentence to stay his two-year, concurrent term on count 2. (§ 654.)

## II. BACKGROUND FACTS

At approximately 4:30 a.m. on June 15, 2008, defendant was driving on Interstate 10 in Banning when his car was clocked traveling 95 miles per hour by the radar device of a California Highway Patrol (CHP) vehicle that was parked on the shoulder of the freeway monitoring traffic for speed violations. Two CHP officers performed a traffic stop of defendant's car. The officers suspected defendant had been driving while impaired, as defendant's eyes were red and glassy, the officers smelled alcohol inside the vehicle, and there was an open beer can in the vehicle. Defendant told the officers he had consumed only two beers earlier that evening and had stopped drinking around 7:00 p.m. Defendant failed four different field sobriety tests, was arrested, and after electing to take a chemical breath test rather than a blood test, twice registered 0.15 percent blood-alcohol content on the chemical breath test.

At the time of his DUI arrest, defendant signed a notice to appear at the Banning Superior Court on July 14, 2008 and was released from custody. The notice to appear (citation No. 27248HU) listed defendant's home address in Mira Loma, where defendant had lived since 2000. On August 4, 2008, a notice of correction was mailed to defendant's home address, advising defendant that his July 14, 2008 court appearance was rescheduled to October 8, 2008, and that he should appear at the Indio Superior

3

Court. The notice of correction referenced citation No. 27248HU, the same citation number on the notice to appear defendant signed at the time of his June 15, 2008 arrest. Defendant maintains he appeared at the Banning courthouse on October 24, 2008, but was told by a court clerk no case against him had been filed.

Defendant did not appear at the October 8, 2008 hearing, or at three subsequent hearings on September 4, 2009, March 1, 2010, and November 17, 2011, all at the Indio Superior Court, and citations to appear and bench warrants for failure to appear (Pen. Code, § 978.5, subd. (a)) were issued at or after each hearing. Defendant acknowledged that he received citations to appear before the Indio Superior Court, and that he received the bench warrants, but he believed they were erroneously sent to him since he was arrested for DUI in Banning and "could not conceive of why he would have a warrant from Indio." According to defendant, he "never received any notice or any documents indicating that a case had been filed against [him] in Indio, or ordering [him] to appear in Indio on October 8, 2008." He also believed the citations and bench warrants from the Indio Superior Court were meant for another person with the same name, as he had previously "been cited and otherwise mixed up with other people named Victor Vasquez in the past. It is a fairly common name."

On January 2, 2014, defendant was arrested for the 2008 DUI when he appeared at the sheriff's department for his annual registration as a registered sex offender. (Pen Code, § 290.) Between 2008 and 2013, defendant registered annually, as required by Penal Code section 290, but on these occasions he was not advised of, nor arrested for,

4

the 2008 DUI case, or the subsequent citations and bench warrants.  Additionally, he was a witness in an attempted murder case in 2009,[2] but he was not informed of his pending DUI case or of any outstanding citations or bench warrants during the multiple interactions he had with the district attorney's office and the police in connection with his murder trial testimony.

III.  PROCEDURAL HISTORY

On August 29, 2008, defendant was charged in a misdemeanor complaint of DUI (Veh. Code, § 23152, subd. (a), count 1) with driving a vehicle with a blood-alcohol content of 0.08 percent or more (Veh. Code, § 23152, subd. (b), count 2), and of driving without a valid license (Veh. Code, § 12500, subd. (a), count 3) based on his June 15, 2008 DUI arrest.  It was also alleged defendant had two prior DUI convictions, both in 2006.

On January 6, 2014, after defendant was again arrested for the 2008 DUI, the court granted the People's request to file an amended complaint to allege a third prior DUI offense in 2013, based on a 2011 DUI arrest in Los Angeles County.  Since defendant had been convicted of DUI three times within a 10-year period, the People elected to charge his 2008 DUI offenses as felonies.  (Veh. Code, § 23550, subd. (a).)  In their January 6, 2014 felony complaint, the People also alleged defendant had four prior strike convictions.  (Pen. Code, §§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2).)

_____

[2] *People v. Gonzalez* (May 31, 2011, E050275) [nonpub. opn.].

5

On January 27, 2014, the People filed an amended felony complaint alleging three prior strike convictions (Pen. Code, §§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)), and one prison prior (Pen. Code, § 667.5, subd. (b)). On February 20, 2014, the People filed an information. The People filed an amended information on January 29, 2015, after the jury trial, to correct an error related to defendant's 2013 DUI conviction.

On October 15, 2014, the court granted defendant's *Romero*[3] motion to dismiss his three prior strikes, since it had been 27 years since defendant committed the strikes in 1987,[4] and defendant had "been relatively crime free," other than some misdemeanor violations, since that time. (Pen. Code, § 1385.)

The trial on defendant's 2008 DUI charges was originally set for January 21, 2014, but was continued numerous times for good cause, with the majority of the continuances requested by defendant. (Pen. Code, § 1050, subd. (d).) According to the minute orders, each time the court granted a trial continuance, defendant waived the time for trial to begin. On one occasion, he expressly waived the "time for speedy trial . . . ." The parties stipulated the last day for trial to begin was January 15, 2015. The parties appeared for the first day of trial on January 12, 2015, and argued motions in limine on January 14, 2015. On January 15, 2015, after the jury had been selected but before

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[4] Defendant's prior strike convictions are discussed in this court's opinion in *People v. Vasquez* (1991) 226 Cal.App.3d 988.

6

opening statements, defendant pled guilty to the count 3 charge of driving without a valid license. (Veh. Code, § 12500.)

A. *Defendant's Statute of Limitations Challenges*

Defendant made three motions arguing his DUI charges were barred by the three-year statute of limitations (Pen. Code, § 801): a pretrial motion to set aside the information (Pen. Code, § 995), an oral motion during trial for entry of judgment of acquittal for insufficient evidence (Pen. Code, § 1118.1), and a posttrial motion for a new trial (Pen. Code, § 1181). In all three motions, defendant asserted the DUI charges were barred because the People did not commence the felony DUI prosecution until January 2014, approximately five and a half years after defendant's June 2008 DUI arrest.

The court denied all of defendant's motions. In denying defendant's Penal Code section 995 motion to set aside the information, the court explained that the People filed the information "in February of 2014, and that's within the three years of the event [i.e., defendant's 2013 DUI conviction] that could legally trigger the felony charge." As for the subsequent motions, the court ruled the statute of limitations challenges should have been raised by writ.

B. *Defendant's Speedy Trial Motions*

Both before and after the jury trial, defendant filed motions to dismiss the action, asserting, as he does on this appeal, that "[t]he delay of five years [between his June 2008 DUI arrest and January 2014 felony prosecution] was a violation of the defendant's right

7

to a speedy trial under both the California and United States Constitutions" (speedy trial motion).

In support of his two speedy trial motions, and as noted, defendant stated he never received the initial notice ordering him to appear on October 8, 2008 at the Indio Superior Court instead of at the Banning Superior Court, and that he went to the courthouse in Banning on October 24, 2008 "to try to determine if anything had been filed on my case," but was told by a clerk at the Banning Superior Court that no case against him had been filed.

Defendant also admitted he received citations to appear in Indio, and he received bench warrants for failure to appear, but "[h]e believed the citation was a mistake, and that the prosecution, for whatever reason, had failed to file on his DUI from Banning." He also believed the citations to appear were mistakes because he registered annually pursuant to Penal Code section 290, and "had come up 'clean' in background checks several times after his 2008 Banning citation." He also stated that he had "been cited and otherwise mixed up with other people named Victor Vasquez in the past."

Defendant also pointed out that he had multiple interactions with the district attorney's office and with the police when he testified as a witness for the prosecution in the October 2009 murder trial, but he was never advised of the citations, bench warrants, or of his pending DUI case during his interactions with the police and district attorney's office in connection with his testimony. Because he "was never made aware that a

8

misdemeanor warrant existed," and because he believed the citations to appear in Indio were mistakes, he "assumed that no [DUI] case had been filed" for the 2008 DUI.

The court denied defendant's first speedy trial motion, explaining that "there are a number of equities that [defendant] may have in terms of resolution of the case, but [the court's] problem is that almost all of the problem is of [defendant's] making. He failed to appear. It is not reasonable for someone who gets a citation in Indio, even though it was a Banning case, to say, yeah, it must be somebody else's, my name's common, but I'm not going to show up. Especially if you keep getting that notice. You take care of your issues. Even if it isn't you, you clear it up so warrants don't keep getting issued. [Defendant] didn't do that. [¶] Memories have faded. Also, the CHP officer's memory has faded from what I read in the documents that quoted the preliminary hearing transcript. [¶] I don't find that there's any intentional delay by the district attorney. They attempted to prosecute, but [defendant's] failures to appear [led] to his problems where he finds himself now."

In denying the second speedy trial motion, the court focused on the multiple trial continuances that delayed the commencement of trial by nearly one year. The court denied the motion since trial had commenced prior to January 15, 2015, the stipulated last day for trial to begin.

IV. DISCUSSION

As noted, defendant contends his right to a speedy trial, guaranteed by both the United States and California Constitutions, was violated due to "the delay of more than

9

six years in prosecuting [defendant] for the 2008 DUI offenses."  We conclude there was no violation of defendant's speedy trial rights.

A.  *Standard of Review*

Contrary to defendant's assertion that a de novo standard of review applies, a trial court's denial of a motion to dismiss based on a violation of speedy trial rights under the state and federal Constitutions is reviewed for an abuse of discretion.  (*Dews v. Superior Court* (2014) 223 Cal.App.4th 660, 664, citing *Serna v. Superior Court* (1985) 40 Cal.3d 239, 245-246, 263-264 (*Serna*) & *Ogle v. Superior Court* (1992) 4 Cal.App.4th 1007, 1014 (*Ogle*).)  The abuse of discretion standard applies even where the "court denied the motion without expressly balancing the factors set forth in *Barker* [*v. Wingo* (1972) 407 U.S. 514] for evaluating a federal speedy trial claim."  (*Dews v. Superior Court*, *supra*, at p. 663.)

B.  *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Speedy Trial Motions*

1.  Defendant's Federal Constitutional Right to a Speedy Trial Was Not Violated

The Sixth Amendment of the United States Constitution guarantees an accused "the right to a speedy and public trial . . . ."  (U.S. Const., 6th Amend.)  The right to a speedy trial "'is imposed by the Due Process Clause of the Fourteenth Amendment on the States.'"  (*People v. Williams* (2013) 58 Cal.4th 197, 232 (*Williams*), quoting *Barker v. Wingo*, *supra*, 407 U.S. at p. 515.)  "'*[I]t is either a formal indictment or information* or else the actual *restraints imposed by arrest and holding to answer a criminal charge that*

10

*engage the particular protections of the speedy trial provision of the Sixth Amendment*.' [Citation.]"  (*Serna*, *supra*, 40 Cal.3d at p. 252.)

In evaluating whether a defendant's federal constitutional right to a speedy trial has been violated, "*Barker* established a balancing test consisting of 'four separate enquiries:  whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.' [Citation.]"  (*Williams*, *supra*, 58 Cal.4th at p. 233.)  "The burden of demonstrating a speedy trial violation under *Barker*'s multifactor test lies with the defendant."  (*Ibid*.)  None of the four factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  (*Barker v. Wingo*, *supra*, 407 U.S. at p. 533; *Williams*, *supra*, at p. 233.)

(a)  *The Delay Before Trial Was Uncommonly Long*

Defendant and the People agree that the first *Barker* factor has been met by the approximately five and a half year delay between the June 2008 DUI citation and misdemeanor complaint filed in August 2008, and defendant's second arrest and felony prosecution for the June 2008 DUI in January 2014.  A "delay between the filing of a misdemeanor complaint and the arrest and prosecution of a defendant which exceeds one year is unreasonable and presumptively prejudicial . . . ."  (*Serna*, *supra*, 40 Cal.3d at p. 253; accord, *Dews v. Superior Court*, *supra*, 223 Cal.App.4th at p. 665.)

11

(b) *Defendant Is More to Blame for the Delay*

Defendant argues the People offered no justification, other than to blame defendant, for their delay in prosecuting him. Defendant points out he did not hide from authorities and claims, since he had no duty to bring himself to trial, that the People's lack of diligence in pursuing him lessens his burden to show he suffered prejudice. He also argues the People's delay was inexcusable because "this was not a 'serious and complex case' in which some delay in prosecution can be excused."

Where a defendant is "aware of the pending charges and [is] fully able to appear in court," he cannot prevail on a speedy trial motion by arguing that the authorities failed to exercise due diligence in attempting to locate and apprehend him, as "'[s]uch a ruling *encourages* defendants to become fugitives.' [Citation.]" (*People v. Hsu* (2008) 168 Cal.App.4th 397, 406 (*Hsu*).)

In *Hsu*, the defendant failed to appear for sentencing in 1992 and fled the country. (*Hsu*, *supra*, 168 Cal.App.4th at at p. 402.) He returned in 2003 and made no effort to hide his identity. (*Ibid.*) The authorities only made "cursory efforts to locate [him]," until he was finally arrested in 2007 and sentenced in 2008. (*Id.* at pp. 402-403, 405.) Hsu claimed the trial court erred in denying his motion to dismiss the charges against him because the delay in sentencing violated his constitutional right to a speedy trial. (*Id.* at pp. 401, 403.) Although the *Hsu* court did not directly address the issue of whether the right to a speedy imposition of sentence was included in the right to a speedy trial, it explained "even were we to conclude that Hsu had a Sixth Amendment right to speedy

sentencing, he has failed to establish a violation of that right" under the *Barker* test. (*Hsu*, *supra*, at pp. 403-404.)  In evaluating the defendant's claim, the *Hsu* court applied "the four-part analysis of *Barker* . . . to Hsu's speedy sentencing claim."  (*Id*. at p. 405.) Hsu argued that the 15-year delay between his 1992 flight and his 2007 arrest must be attributed to the government, as "he 'led a very visible and public life using his own identity.  He did not act like a fugitive.  He did not evade the authorities, but rather openly associated with highly public politicians.'"  (*Ibid*.)

Although the *Hsu* court expressed its concern that Hsu had "engaged in such prominent political activity without being detected," it concluded, "Hsu's flight to avoid being sentenced must be weighed more heavily than the ensuing failure of the government to apprehend him."  (*Hsu*, *supra*, 168 Cal.App.4th at p. 406; see *Leaututufu v. Superior Court* (2011) 202 Cal.App.4th Supp. 1, 6, fn. 3 ["In the context of the *Barker* balancing, if the delay is caused by the defendant (such as when the defendant deliberately fails to appear), that factor is likely to be given far more weight than the failure of the People to track the defendant down."].)

Although authorities must "'exercise due diligence in attempting to locate and apprehend the accused,'" the *Hsu* court believed "imposing such a duty [only] makes sense in cases where a defendant cannot appear of his own volition . . . because he is unaware of the pending charges [citations] . . . ."  (*Hsu*, *supra*, 168 Cal.App.4th at p. 406.)  The court also explained:  "'There is no requirement that law enforcement officials "make heroic efforts to apprehend a defendant who is purposefully avoiding

13

apprehension"' [citation] [as] the government should have discretion concerning how to allocate its finite investigative resources and . . . it cannot be expected to pursue each of these 100,000 individuals [who have outstanding arrest and bench warrants] with the effort it might expend to capture, for example, a serial killer." (*Ibid.*)

Here, defendant was ordered to appear before the Indio Superior Court on four separate occasions, and he acknowledged receipt of the citations to appear and the bench warrants for his arrest. Defendant did not appear at any of the hearings[5] because he believed the citations and bench warrants were sent to him in error, since he was cited for DUI in Banning, not in Indio, and also because he believed they were intended for someone who had the same name as him. Defendant could have resolved any uncertainty by going to the Indio Superior Court to confirm the citations and warrants were meant for someone else, yet he elected not to do so. Based on these facts, and despite the government's delay in arresting him, defendant is more to blame for the delay before trial, and this *Barker* factor is weighed against him. (*Hsu*, *supra*, 168 Cal.App.4th at p. 406.)

Defendant relies on *Ogle*, *supra*, 4 Cal.App.4th 1007 for the proposition that the People are solely to blame for the delay because authorities failed to make any effort to arrest defendant at his known address, particularly where he did not hide to avoid prosecution and had many contacts with law enforcement. Like defendant, Ogle was

---

[5]  After his 2011 DUI arrest in Los Angeles County, defendant failed to appear at his arraignment and a bench warrant for his arrest was issued.

14

cited for DUI and released based on his signed promise to appear, and a bench warrant was issued after he failed to appear. (*Id.* at pp. 1011-1012.) Two years later, Ogle appeared in court and, soon thereafter, moved to dismiss the DUI charges on the ground the two-year delay violated his federal constitutional right to a speedy trial right. (*Id.* at p. 1012.) At the time he appeared, Ogle still lived at the address listed on his notice to appear. (*Ibid.*) The trial court denied the motion, concluding Ogle was not prejudiced by the two-year delay. (*Id.* at p. 1018.) The *Ogle* court concluded that the trial court abused its discretion in denying the motion and remanded the matter for further consideration. (*Id.* at pp. 1021-1023.) The *Ogle* court explained: "Though the government bore significant responsibility for the long delay, the court refused to consider the government's conduct in the balance." (*Id.* at p. 1022.) Still, Ogle's "own role in the delay" could not be overlooked and was relevant in weighing the *Barker* factors. (*Ogle*, *supra*, at pp. 1019, 1021.) Here, too, defendant's own role in the delay in prosecuting him cannot be overlooked. *Ogle* is also distinguishable because Ogle claimed he did not recall being arrested or signing a promise to appear, even after reading the police report of the incident. (*Id.* at p. 1012.) Defendant, by contrast, admitted he knew about his 2008 arrest and of the subsequent citations to appear, and he had never forgotten about them.

Furthermore, defendant cannot focus on the conduct of the People while overlooking his own role in the delay. (See *Ogle*, *supra*, 4 Cal.App.4th at pp. 1019, 1021.) As the court explained when it denied defendant's first speedy trial motion,

15

defendant could have determined whether the citations and bench warrants were intended for him by simply going to the Indio Superior Court, yet defendant chose not to do so. As the *Ogle* court explained, "if [the defendant] willfully failed to appear, it would seem fair to apportion some of the blame to [the defendant]" if the defendant's conduct contributed to the delay. (*Id*. at p. 1021.)

### (c) *Defendant Did Not Timely Assert His Right to a Speedy Trial*

Defendant next claims he timely asserted his right to a speedy trial, both before and after trial, and he maintains "[h]e could not have made the claim sooner, as he was unaware of the pending charges."

"'[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the [*Barker*] factors to be considered in an inquiry into the deprivation of the right.' [Citation.] 'Whether and how a defendant asserts his right is closely related to the . . . [remaining *Barker* factors]. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.' [Citation.]" (*Williams*, *supra*, 58 Cal.4th at pp. 237-238.)

"If [a defendant] knew or constructively knew of the pending case, his failure to assert his right [to a speedy trial] might well be dispositive. '[F]ailure to assert the right

16

will make it difficult for a defendant to prove that he was denied a speedy trial.' [Citation.]  However, if [the defendant] did not know of the pending case, his failure to assert his right would be excused." (*Ogle*, *supra*, 4 Cal.App.4th at p. 1021; see *Hsu*, *supra*, 168 Cal.App.4th at p. 407 [given his "undeniable knowledge of his pending sentencing hearing . . . [the defendant's] failure to assert his right to be sentenced for so many years weighs strongly against him."].)

Defendant acknowledged being arrested for DUI on June 15, 2008, and receiving a number of citations to appear, as well as bench warrants for failure to appear, between 2008 and 2011.  Based on these facts, defendant knew of the pending case since he signed the DUI citation in June 2008 (see *Ogle*, *supra*, 4 Cal.App.4th at pp. 1019-1020), but he delayed until August 2014, when he filed his first speedy trial motion, before asserting his right to a speedy trial.  By waiting more than six years after his 2008 DUI arrest, and nearly seven months after the People commenced their felony prosecution in January 2014, to assert his right to a speedy trial, defendant did not timely assert his speedy trial rights, and we weigh this *Barker* factor against him.

*People v. Vila* (1984) 162 Cal.App.3d 76, which defendant relies on for the proposition that "where the prosecution's failure to bring a person to trial is unjustified, . . . [the failure] must properly weigh heavily against the prosecution" is distinguishable.  In that case, the government filed a "'secret' indictment" against the defendant, but it never informed the defendant or his counsel of the indictment until four years later, when the defendant was brought into court and arraigned on the indictment.

17

(*Id.* at pp. 79-80.)  Here, by contrast, there was no "secret indictment."  As discussed, defendant concedes he knew of his 2008 DUI arrest and the subsequent notices to appear.

(d) *Defendant Has Not Established the Delay Prejudiced Him*

Defendant asserts the People's delay in arresting him caused him actual prejudice because, by the time of trial in January 2015, both he and the arresting CHP officer could no longer recall details from the 2008 DUI.

"Whether defendant suffered prejudice as a result of the delay must be assessed in light of the interests the speedy trial right was designed to protect:  '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'  [Citation.]"  (*Williams*, *supra*, 58 Cal.4th at p. 235.)  However, a defendant "cannot benefit from a presumption of prejudice [where] the record does not show that the state was responsible for the delay. [Citation.]"  (*Id.* at p. 252.)  He also cannot rely on claims of prejudice that are vague and speculative, such as where defendant "has not specifically identified what witnesses might have eluded the defense or what testimony might have been lost or distorted as a result of the delay in this case."  (*Id.* at p. 236; see *Serna*, *supra*, 40 Cal.3d at p. 250 ["the court need not accept a conclusory statement that the lack of recall demonstrates prejudice where no effort has been made to ascertain the basis for the charge."].)

As discussed, defendant is more responsible for the delay because he disregarded four citations to appear before the Indio Superior Court.  Although defendant contended he believed those citations were mistakenly sent to him, he could have resolved any

18

mistake by going to the Indio Superior Court so that "warrants [for his arrest] don't keep getting issued." He chose not to do so, and cannot now claim he was prejudiced by his own delay. (*Williams*, *supra*, 58 Cal.4th at p. 252.)

Moreover, we reject defendant's contention that he suffered actual prejudice due to the passage of time that has faded both his memory and the memory of the arresting officer. Defendant submitted a declaration that he "only vaguely recall[ed] [his] arrest on June 15, 2008. [He] was drinking heavily during that period in [his] life and that drinking has negatively impacted [his] memory from that time frame. For example, [he] do[es] not recall how much [he] drank, what [he] was drinking, or how [he] was driving at the time the officer stopped [him]. [¶] If [he] had been able to review the police reports on [his] case within a few months of the incident [he] would have been much better able to recall the facts of the incident."

In *Serna*, the defendant submitted a declaration that he had no independent recollection of his activities leading to his arrest. (*Serna*, *supra*, 40 Cal.3d at p. 250.) The *Serna* court concluded the defendant's "declaration was insufficient to support a finding of prejudice," and it explained the "[l]ack of recall may establish prejudice, but only on a showing that the memory loss persists after reasonable attempts to refresh recollection. 'The showing of actual prejudice which the law requires must be supported by particular facts and not . . . by bare conclusionary statements.' [Citation.]" (*Ibid.*)

Here, defendant's claim of actual prejudice is supported solely by his declaration that he "only vaguely recall[ed] [his] arrest on June 15, 2008" and that he did not

19

remember the facts of his 2008 DUI arrest. However, as noted, defendant acknowledged in his first speedy trial motion that he remembered his DUI arrest, he recalled receiving multiple citations to appear and bench warrants for failure to appear, and he even went to the Banning courthouse to check on the status of his DUI case. (Cf. *Ogle*, *supra*, 4 Cal.App.4th at p. 1012 [the defendant did not remember being arrested, or signing a promise to appear, even after reading the police report of the incident].) Based on defendant's own admission, he has not established memory loss to support his claim of prejudice. Furthermore, the record does not support defendant's contention that the arresting CHP officer "did not recall [defendant] as the person he stopped and cited on June 18, 2008," as the officer testified at trial that he was certain defendant was the person he arrested on June 15, 2008, after he reviewed defendant's booking photographs, "which also had the booking numbers and things like that that correlated to [his] report." Defendant claims "the testimony of the arresting officer [at the preliminary hearing] revealed that he did not recall [defendant] as the person he stopped and cited on June 18, 2008." This claim overstates the CHP officer's testimony, as the officer testified at the preliminary hearing that, prior to the hearing, he had not reviewed any photographs of the person he arrested in 2008 that would have refreshed his memory. However, the CHP officer testified he recognized defendant's face as someone he had come into contact with at one point or another, but he "would need probably some photograph to refresh [his] memory" that defendant was the person he pulled over in 2008. By the time of trial, the

officer had reviewed the photographs to refresh his memory, and his memory was refreshed.

(e) *Balancing of the Barker Factors Supports Trial Court's Denial of Defendant's Speedy Trial Motion*

As discussed, the delay between defendant's 2008 DUI citation and his eventual 2014 arrest was unreasonably long. However, the delay was caused mostly by defendant's decision not to appear before the Indio Superior Court despite receiving multiple citations to appear, and at least three bench warrants that were issued as a result of his prior failures to appear. Defendant "cannot benefit from a presumption of prejudice" that was his own doing (*Williams*, *supra*, 58 Cal.4th at p. 252), particularly where he knew of his 2008 DUI arrest, yet waited more than six years to raise a claim that his right to a speedy trial had been violated (*Hsu*, *supra*, 168 Cal.App.4th at p. 407; *Ogle*, *supra*, 4 Cal.App.4th at p. 1021).

Based on our consideration and balancing of the four *Barker* factors, we conclude the court did not abuse its discretion in denying defendant's speedy trial motions, as defendant's Sixth Amendment "right to a speedy and public trial, by an impartial jury of the state" (U.S. Const., 6th Amend.) was not violated.

2. Defendant's State Constitutional Right to a Speedy Trial Was Not Violated

Under the California Constitution, "[t]he defendant in a criminal cause has the right to a speedy public trial . . . ." (Cal. Const., art. I, § 15.) Unlike a federal constitutional claim, in determining whether a defendant's state constitutional right to a

21

speedy trial has been violated, there is no presumption of prejudice arising solely from an unreasonable delay; rather, the "'defendant seeking dismissal must affirmatively demonstrate prejudice.'" (*People v. Lowe* (2007) 40 Cal.4th 937, 939; *People v. Martinez* (2000) 22 Cal.4th 750, 755, 767.) If the defendant has demonstrated prejudice by the delay, the prosecution must then offer justification for the delay, and the court considering the motion to dismiss must balance the harm to the defendant against the justification for the delay. (*People v. Lowe*, *supra*, at p. 942; *People v. Martinez*, *supra*, at pp. 766-767.) Factors the court may consider include who is responsible for the delay and whether the reason for the delay was deliberate. (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 911.) "Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." (*Id.* at p. 915; *People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1327.) If the defendant fails to meet his or her burden of showing prejudice, there is no need to determine whether the delay was justified. (*Serna*, *supra*, 40 Cal.3d at pp. 249-251; *People v. Dunn-Gonzalez*, *supra*, at p. 911; accord, *People v. Egbert* (1997) 59 Cal.App.4th 503, 511.)

As noted, defendant claims that he has been prejudiced by the passage of time that has faded his and the arresting officer's memories. However, the arresting officer testified at trial that, after reviewing the booking photographs and his arrest report, he was certain defendant was the person he arrested on June 15, 2008. In addition, although

defendant may not recall the details of his 2008 DUI arrest, he knew he had been arrested for DUI, that he received a number of citations to appear before the Indio Superior Court, and that bench warrants were issued because he did not appear before the Indio Superior Court. Despite this knowledge, he disregarded the citations to appear, as well as the bench warrants, until he was arrested on January 2, 2014. Based on these facts, defendant has not met his burden of affirmatively demonstrating prejudice.

On this basis, we conclude the court did not abuse its discretion in denying defendant's speedy trial motions, as defendant's state constitutional right to a speedy public trial (Cal. Const., art. I, § 15) was not violated.

C. *The Count 2 Sentence Must Be Stayed Pursuant to Penal Code Section 654*

At the sentencing hearing, the People requested the court to stay, pursuant to Penal Code section 654, defendant's count 2 sentence for driving with a blood-alcohol content equal to or greater than 0.08 percent. (Veh. Code, § 23152, subd. (b).) In its oral pronouncement, the court did not order the count 2 sentence stayed, and neither the sentencing minute order nor the felony abstract of judgment reflects a stay on the count 2 sentence. Pursuant to Penal Code section 654, we now modify defendant's sentence to stay the concurrent two-year sentence on count 2. (See *People v. Martinez* (2007) 156 Cal.App.4th 851, 853, 857 [where the defendant was convicted of four separate DUI counts, including violations of both Veh. Code, § 23152, subds. (a), (b), all arising from a single act, the concurrent sentences on three of the four convictions were stayed pursuant to Pen. Code, § 654]; see *People v. Duarte* (1984) 161 Cal.App.3d 438, 447 [where the

23

defendant was convicted of both subds. (a), (b) of Veh. Code, § 23153, "[t]he court properly exercised discretion in choosing to stay the execution of sentence on the subdivision (b) conviction."].)

## V.  DISPOSITION

The sentence is modified to stay the concurrent two-year term on defendant's DUI conviction (Veh. Code, § 23152, subd. (b)) in count 2.  As modified, the judgment is affirmed.  Pursuant to the modification, the trial court is directed to prepare a supplemental sentencing minute order and an amended abstract of judgment to reflect that defendant's concurrent two-year sentence on count 2 has been stayed pursuant to Penal Code section 654.  The trial court is also directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

SLOUGH
J.